DAVID WHITON & others *vs.* ALBANY CITY INSURANCE COM-
PANY.

SAME *vs.* NARRAGANSETT FIRE AND MARINE INSURANCE
COMPANY.

A copy, printed by authority of the senate of the United States, of a public document
communicated to the senate by the President, is as competent evidence as the original
document.

Upon the issue whether a material, the product of a certain island and usually exported
therefrom, with which a vessel loaded there for a voyage on which she was lost, was
commonly and commercially known as guano, and whether the island was known in
commerce, trade, navigation and the business of marine insurance, as a guano island,
within a clause in a policy of marine insurance prohibiting the vessel from all guano
islands, public documents communicated by the President to the senate of the United
States, and printed by order of the senate, of a time prior to the policy, are admissible
to show that the United States had acquired, and asserted against foreign governments,
a title in the island under an act of Congress authorizing such titles to be acquired and
maintained only in islands having deposits of guano thereon; also, a proclamation of the
secretary of state, in reference to the island, in accordance with that act, and of a date
prior to the policy; but not a circular, issued since the date of the policy, to collectors of
customs by the secretary of the treasury, inclosing a list of guano islands pertaining to
the United States under the act.

A book published in this country by a private person, and not shown to have been approved
by any public authority, or to be in general use among merchants or underwriters, can-
not be read to a jury on the issue whether an island is commonly called and known as a
guano island in commerce and the business of marine insurance.

TWO ACTIONS OF CONTRACT upon policies of insurance made
in July 1868 on vessels, for one year, in the usual form, and con-
taining this clause : " Prohibited from the River and Gulf of St.
Lawrence," and other places, " and from all guano islands, except
the Chinchas," or " Peruvians," which were admitted to be the
same.

The cases were tried together in the superior court before
*Devens,* J. It appeared that each vessel was lost by perils of the
sea, during the year, on a voyage from the island of Navassa in
the Caribbean Sea, after loading there with a cargo of a material,
the product of that island, and usually exported therefrom, which
the defendants claimed to be guano, and the plaintiffs claimed to
be a mineral phosphate, and not guano. It also appeared that
the island of Navassa was a barren rock, about fifty miles off the

coast of Hayti, and had only been discovered or known to the commercial world since about 1856. The question submitted by the judge to the jury, with the assent of the parties, was not whether the material was scientifically and chemically a guano, but whether it was commonly and commercially known as guano, and whether the island of Navassa was called and known in commerce, trade, navigation, and the business of marine insurance, as a guano island; and upon that issue the testimony of experts was introduced on the one side and the other, without objection.

The defendants put in the act of congress of 1856, *c.* 164, which is copied in the margin; * and, as bearing upon the ques-

---

* " AN ACT to authorize protection to be given to citizens of the United States who may discover deposits of guano.

" BE IT ENACTED by the senate and house of representatives of the United States of America in Congress assembled, that, when any citizen or citizens of the United States may have discovered, or shall hereafter discover, a deposit of guano on any island, rock or key, not within the lawful jurisdiction of any other government, and not occupied by the citizens of any other government, and shall take peaceable possession thereof, and occupy the same, said island, rock or key may, at the discretion of the President of the United States, be considered as appertaining to the United States : Provided, however, that notice be given by such discoverer or discoverers, as soon as practicable, to the state department of the United States, of such discovery, occupation and possession, verified by affidavit, describing said island, rock or key, and the latitude and longitude thereof, as near as may be, and showing that such possession was taken in the name of the United States, and that satisfactory evidence be furnished to the state department that such island, rock or key was not, at the time of discovery thereof, or of the taking possession and occupation thereof by the claimants, in the possession or occupation of any other government or of the citizens of any other government.

" SECTION 2. And be it further enacted, that the said discoverer or discoverers, or his or their assigns being citizens of the United States, may be allowed, at the pleasure of Congress, the exclusive right of occupying said islands, rocks or keys, for the purpose of obtaining said guano, and of selling and delivering the same to citizens of the United States, for the purpose of being used therein, and may be allowed to charge and receive for every ton thereof delivered alongside a vessel, in proper tubs, within reach of ship's tackle, a sum not exceeding eight dollars per ton for the best quality, or four dollars per ton in its native place of deposit: Provided, however, that no guano shall be taken from said island, rock or key, except for the use of the citizens of the United States, or of persons resident therein, as aforesaid. And provided also, that said dis-

Whiton *v.* Albany and Narragansett Insurance Companies.

tion whether the island of Navassa was generally known and des-ignated as a guano island, and for the purpose of showing that it had been considered as appertaining to the United States under the act of congress, and had been treated by the government of the United States and its officers as a guano island, offered in evidence copies of the following public documents, which were admitted to be duly authenticated :

1st. A letter from the secretary of state to the secretary of the navy of the United States, dated July 7, 1858, which is copied in the margin ; * together with the memorial of Peter Duncan,

coverer or discoverers, or his or their assigns, shall first enter into bonds, with such penalties or securities as may be required by the President, to deliver the said guano to citizens of the United States, for the purpose of being used therein, and to none others, and at the price aforesaid, and to provide all nec-essary facilities for that purpose within a time to be fixed in said bond. And any breach of the provisions thereof shall be taken and deemed a forfeiture of all rights accruing under and by virtue of this act.

" SECTION 3. And be it further enacted, that the introduction of guano from such islands, rocks or keys, shall be regulated as in the coasting trade be-tween different parts of the United States, and the same laws shall govern the vessels concerned therein.

" SECTION 4. And be it further enacted, that nothing in this act contained shall be construed obligatory on the United States to retain possession of the islands, rocks or keys, as aforesaid, after the guano shall have been removed from the same.

" SECTION 5. And be it further enacted, that the President of the United States is hereby authorized, at his discretion, to employ the land and naval forces of the United States to protect the rights of the said discoverer or dis-coverers or their assigns, as aforesaid.

" SECTION 6. And be it further enacted, that, until otherwise provided by law, all acts done, and offences or crimes committed, on every such island, rocks or keys, by persons who may land thereon, or in the waters adjacent thereto, shall be held and deemed to have been done or committed on the high seas, on board a merchant ship or vessel belonging to the United States, and be pun-ished according to the laws of the United States relating to such ships or ves-sels and offences on the high seas; which laws, for the purposes aforesaid, are hereby extended to and over such islands, rocks or keys."

* " Department of State. Washington, July 7, 1858. To Hon. Isaac Toucey, Secretary of the Navy. Sir : Application has been made to this department by Edward K. Cooper, Esq., of Baltimore, for the protection of his interests in a deposit of guano in the island of Navassa, lying in latitude 18° 10'

therein referred to, (complying in all respects with the first section of the act of Congress,) and the affidavits in support of the same; the letter of his assignee, Edward K. Cooper, also therein referred to; a letter from the secretary of state to Cooper, dated July 8, 1858, inclosing a copy of his letter to the secretary

---

north, longitude 75° west, about forty-five miles from the island of San Domingo, and about seventy miles from the island of Jamaica. Mr. Cooper claims this guano as the assignee of Peter Duncan, who, in a memorial to this department, supported by affidavit sworn to on the 18th of November last, represents that he discovered the deposit of guano adverted to, on the 1st of July 1857; that he took peaceable possession of the same on the 19th of September last, and the said island was not within the lawful jurisdiction of any other government or occupied by the citizens or subjects of any other country. In a letter to this department, of the 17th of last month, Mr. Cooper represents that he had been informed by his agent at Navassa, who was superintending the digging and shipping of guano there, that the Haytien government had sent two vessels of war thither, from which persons claiming to act in behalf of that government had landed, had ordered all operations on the island to cease, and the persons engaged in removing guano thence to withdraw. The President, being of the opinion that any claim of the Haytien government to prevent citizens of the United States from removing guano from the island of Navassa is unfounded, and that in this case it is advisable to exercise the authority vested in him by the fifth section of the act of Congress approved August 18, 1856, entitled 'an act to authorize protection to be given to citizens of the United States who may discover deposits of guano,' directs that you will cause a competent force to repair to that island, and will order the officer in command thereof to protect citizens of the United States, in removing guano therefrom, against any interference from authorities of the government of Hayti, or of any other government. If any persons in the employment of that government should be found upon the island, an offer may be made to land them at Port au Prince, or at any other point which they may designate, and their superiors may be informed of the occasion for this proceeding, and of the determination of this government not to allow the removal of guano from that island by citizens of the United States to be interfered with in any manner by the citizens or authorities of Hayti, or by persons claiming to act under them. It is hoped that the President's object may, by firmness and discretion, be accomplished, not only without any effusion of blood, but without giving reasonable cause for offence in any quarter. Copies of the act of Congress referred to are herewith inclosed. I have the honor to be, sir.

"Your obedient servant,

"LEWIS CASS."

of the navy; letters from the secretary of state to Cooper, in July and August 1868, requiring a bond from him in the penalty of $50,000, under the second section of the act of Congress, "in the case of the guano island of Navassa," and acknowledging the receipt of such a bond; letters in August 1858 from the commander of a ship of war of the United States, sent out by the navy department to protect Cooper in removing guano from this island, to the secretary of the navy, to the United States consul at Port au Prince, and to the minister of foreign relations of the Haytien government, in the execution of his instructions; a letter dated at Boston, November 13, 1858, written by the commercial agent of the Haytien government, by its directions, to the secretary of state of the United States, stating the grounds upon which Hayti claimed sovereignty over the island of Navassa; and the reply of the secretary of state, dated November 17, 1858, informing him "that, a citizen of the United States having exhibited to this department proofs which were deemed sufficient that that island was derelict and abandoned, with guano of good quality, and having applied for the protection of this government in removing the guano therefrom, pursuant to the act of congress of the 18th of August 1856, a copy of which is inclosed, that application has been granted." All these documents were communicated by the President of the United States to the senate on April 12, 1860, in compliance with a resolution of the senate, requesting "information in regard to the occupation by American citizens of the island of Navassa in the West Indies, and of any correspondence with reference thereto;" and were published among the executive documents printed by order of the senate by the government printer in 1860.

2d. A proclamation of the secretary of state of the United States of December 8, 1859, copied in the margin.*

* " LEWIS CASS, Secretary of State of the United States, to all to whom these presents shall come, greeting : Know ye, that Peter Duncan, a citizen of the United States, has filed in this department the required notice of the discovery of guano in, and of the occupation of the island of Navassa in the Caribbean Sea, in the name of the United States of America, the same being in north latitude eighteen degrees and ten minutes, and in longitude seventy-five

3d. A circular issued February 12, 1869, by the secretary of the treasury to collectors of customs, " relative to the guano islands appertaining to the United States ; " inclosing a list of " guano islands pertaining to the United States and bonded under act of August 18, 1856," including Navassa and seventy other islands and groups of islands ; and containing instructions as to the regulation of trade with them.

All the documents above mentioned were excluded as inadmissible, in whole or in part, for any purpose.

The defendants also, upon the question of the notoriety and repute of Navassa as a guano island, offered to refer to and read, from a book called Appleton's American Cyclopædia, an article on the subject of guano on the islands of the Caribbean Sea ; but were not permitted by the judge to do so.

The jury in each case returned a verdict for the plaintiffs, and the defendants alleged exceptions.

*A. Churchill & J. B. Richardson,* for the defendants.

*B. Dean,* for the plaintiffs.

GRAY, J. The clause in each of these policies, by which the vessel insured was " prohibited from all guano islands," except the Peruvian or Chinchas, was a warranty, any breach of which defeated the policy, without regard to the question whether it did or did not increase the risk. *Odiorne* v. *New England Insurance Co.* 101 Mass. 551. *Cobb* v. *Lime Rock Insurance Co.* 58 Maine 326. The issue submitted to the jury, and the true issue be

degrees west; and that Edward K. Cooper, also a citizen of the United States and the assignee of said Peter Duncan, has entered into sufficient bonds under and according to the provisions of the act of the Congress of the United States passed on the eighteenth day of August in the year eighteen hundred and fifty-six. Wherefore the said Edward K. Cooper is entitled, in respect to the guano in the said island, to all the privileges and advantages intended by that act to be secured to the citizens of the United States who may have discovered deposits of guano : provided always that the said Edward K. Cooper shall abide by the conditions and requirements imposed by the act of Congress aforesaid.

" In witness whereof, I, Lewis Cass, secretary of state of the United States of America, have hereunto set my hand, and caused the seal of the [Seal] department of state to be affixed at Washington this eighth day of December 1859. " LEWIS CASS."

tween the parties, was whether the material deposited on and exported from the island of Navassa was commonly and commercially known as guano, and whether that island was called and known in commerce, trade, navigation and the business of insurance as a guano island; and upon that issue the burden was upon the plaintiffs to show that there had been no breach of the warranty. *McLoon* v. *Mercantile Insurance Co.* 100 Mass. 474 note. The exceptions taken are to the rejection of books and documents offered in evidence by the defendants to assist the jury in deciding that issue.

Acts of congress, and proclamations issued by the secretary of state in accordance therewith, are the appropriate evidence of the action of the national government. Taylor on Ev. (5th ed.) § 1473. 1 Greenl. Ev. § 491. And the volume of public documents, printed by authority of the senate of the United States, containing letters to and from various officers of state, communicated by the President of the United States to the senate, was as competent evidence as the original documents themselves. *The King* v. *Holt*, 5 T. R. 436, and 2 Leach (4th ed.) 593. *Watkins* v. *Holman*, 16 Pet. 25, 55, 56. *Bryan* v. *Forsyth*, 19 How. 334. *Gregg* v. *Forsyth*, 24 How. 179. *Radcliff* v. *United Insurance Co.* 7 Johns. 38, 50.

The act of congress of 1856, *c.* 164, declared that, upon satisfactory evidence furnished to the state department that a citizen of the United States had discovered a deposit of guano on any island, and had taken peaceable possession and occupation thereof in the name of the United States, and that the island was not at the time in the possession or occupation of any other government or its citizens, the island might at the discretion of the President of the United States be considered as appertaining to the United States, the guano might be sold by the discoverer or his assigns to other citizens of the United States and brought to the United States as provided in that act and in the laws regulating the coasting trade, the president might employ the land and naval forces of the United States to protect the rights of the discoverer or his assigns to take the guano from the island, and all crimes there committed might be punished according to the laws of the United States as if committed on the high seas.

The public acts and documents offered in evidence tended to show that the United States had acquired, and had asserted against foreign governments, a title in the island of Navassa by discovery and lawful possession, as authorized by the law of nations. Halleck's International Law, *c.* 6, §§ 7, 15. Wheaton's International Law (8th ed.) §§ 165, 172, 178 note. As the act of Congress of 1856 authorized such title and possession to be so acquired and maintained only in islands having a deposit of guano thereon, we are of opinion that all these acts of the government, done by the sovereign power in which was vested the authority of regulating commerce and intercourse with foreign nations, in peace and war, tended to show that the deposit on the island of Navassa was guano, and the island itself known and called by those engaged in commerce, trade, navigation and marine insurance, as a guano island, and were therefore competent, though not conclusive, evidence of the meaning of the words " guano islands," as used in these policies. It follows that the defendants' exceptions to the rejection of this evidence must be sustained.

The circular issued by the secretary of the treasury since the execution of the policies in suit could not affect their interpretation, and was therefore rightly excluded.

The defendants were also rightly refused permission to read to the jury an article in Appleton's Cyclopædia. A book published in this country by a private person is not competent evidence of facts, stated therein, of recent occurrence, and which might be proved by living witnesses or other better evidence; and the book in question, not being shown to have been approved by any public authority, or to be in general use among merchants or underwriters, had no tendency to show that the island of Navassa was commonly called and known as a guano island. *Fuller* v. *Princeton*, 2 Dane Ab. 333, 334. *Morris* v. *Edwards*, 1 Ohio, 189, 209. *Morris* v. *Harmer*, 7 Pet. 554, 558. *Houghton* v. *Gilbart*, 7 C. & P. 701. *Exceptions sustained.*