HENRY H. ELWELL *vs.* MARK HINCKLEY, JR.

Hampshire. Sept. 17, 18, 1884. — Jan. 8, 1885. C. ALLEN & COLBURN, JJ., absent.

If A. is entitled to a conveyance of land, and, by an agreement between A. and B., in order to defraud A.'s creditors, the land is conveyed to B., a title to the land by adverse possession of more than twenty years may be acquired by A. against B., although A. is without means to pay his debts during such possession, if B. knows that A. is holding the land adversely and under a claim of right during his possession.

At the trial of a writ of entry, if the demandant relies upon a title acquired by his grantor by adverse possession, the books of the assessors of taxes of the town in which the land lies are admissible in evidence for the purpose of showing that the land was assessed to the demandant's grantor during the period of the alleged adverse possession.

WRIT OF ENTRY, dated May 21, 1883, to recover a parcel of land in Belchertown. Plea, *nul disseisin.* At the trial in the Superior Court, before *Rockwell,* J., the jury returned a verdict for the demandant; and the tenant alleged exceptions, which appear in the opinion.

*W. G. Bassett,* for the tenant.

*R. W. Lyman,* for the demandant.

DEVENS, J. 1. The inquiry which the tenant presents, alike by his exception to the admission of evidence that Mark Hinckley held the place adversely to the tenant, and by his request for the ruling which was refused, is whether, when two persons, one of whom is entitled to a conveyance of real estate, cause such conveyance to be made to the other in order that thereby the creditors of the former may be defrauded, a title by adverse possession may be gained by the debtor (he being without means

to pay his debts during the possession) against the grantee, who had been thus invested with the title.

The presiding judge, after fully stating the legal requisites of acquiring title by adverse possession and presumptive grant, in a manner not objected to, instructed the jury that the facts recited would not prevent Hinckley (the debtor under whom the demandant claimed) from acquiring title by adverse possession of more than twenty years and presumptive grant, if the jury were satisfied that the tenant knew that Hinckley was holding adversely and under claim of right during the time. This instruction was correct. It assumes that, even if the grantee participated in the fraudulent intent of Hinckley to defraud his creditors, and accepted the conveyance to aid in this purpose, he acquired a title which, even if voidable by creditors, was good against Hinckley ; and requires of the latter, in order that he himself might acquire a title, such and so long an adverse possession as would cause a grant to be presumed from the tenant. If by the deed, in 1844, the title of the tenant was made perfect, the fact that Hinckley still continued indebted, however important it might be as evidence as to the character of Hinckley's possession, could not alone prevent him from acquiring a title.

The instruction, as given, was adapted to the relation of the parties, as disclosed by the evidence. This tended to show that the estate was held upon a secret trust for the benefit of Hinckley. The presumption is, that the possession of a *cestui que trust* is permissive, and not adverse to the title of the trustee. That it should displace the legal title of the trustee, there should be proved a distinct denial of such title, and a possession inconsistent therewith. *Whiting* v. *Whiting*, 4 Gray, 236, 241. This the instruction required, and, if shown, the facts of the original intent in making the conveyance, and the continued incapacity of Hinckley to pay his debts, cannot prevent his gaining a title by possession. Whether the evidence offered was sufficient, as matter of law, to show a possession distinctly adverse to that of the tenant, of which the latter must have been aware, is not presented by the exceptions, nor is the evidence upon this subject fully reported. It is true that, if the first entry of a tenant on land be permissive, the possession thereunder is presumed so to continue, unless the contrary is made to appear. *Hall* v.

*Stevens*, 9 Met. 418. As the rules as to adverse possession were fully stated without objection, we must deem that the jury were thus instructed; and that it has been properly found that the possession of Hinckley, if at first permissive, was shown to have become adverse, and this with the knowledge of the tenant.

2. The books of the assessors of the town of Belchertown were put in evidence for the purpose of showing that the property was assessed to Hinckley during the years in which it was claimed that he was in adverse occupation, as tending to show this. In *Edson* v. *Munsell*, 10 Allen, 557, the issue was whether one Partridge was insane at the commencement and during the continuance of the time in which an easement over certain real estate by prescription was sought to be established. It was held that, upon this question, the books of the assessors of taxes were competent evidence to show that the land was then taxed to his guardian, and that one Crocker was his guardian during those years; and this for the reason that it was the duty of the assessors to tax the ward's property to his guardian. It is true that, in the case at bar, the property might have been assessed "to the person who is either the owner or in possession thereof." Gen. Sts. *c.* 11, § 8. But this goes rather to the weight than to the admissibility of the testimony. The assessment was still the act of the public authorities charged with the duty, who treated Hinckley as the person bound to bear the public burden of the taxes on this estate. *Exceptions overruled.*