INHABITANTS OF MILFORD *vs*. INHABITANTS OF GREENBUSH.

Penobscot.    Opinion May 4, 1885.

*Town clerk's records.    Evidence.    Abatement of taxes.    Adjutant general's
reports.    Paupers.*

Where a town clerk records upon the town records a document which he is not
by law required to record, such record is not evidence that it is a copy of the
original, nor does the fact that the town clerk is deceased make such record
admissible as a copy, upon proof of the handwriting.

The fact that a municipal tax against a person has not been abated, is no
evidence that it has been paid.

The appendices to the state adjutant general's reports, printed by the state
printer and purporting to be copies of the official returns made to that officer,
are admissible as such copies without further proof.

ON EXCEPTIONS.

This was an action for pauper supplies — the issue being
whether the pauper had his home in defendant town for five
successive years.    Verdict was for the defendants.

The plaintiffs offered in evidence the books of the town of
Greenbush, containing what purported to be copies of the lists
of voters of the town, for the years 1857, 1858, 1859, 1860,
1862 and 1864 to 1869 inclusive, and purporting to be attested
by the town clerks, for the purpose of showing the pauper's
name on those copies; being objected to by defendants, the
presiding judge excluded the same, except the copy of the list
of voters for the year 1869, in the book, which James C. Scott,
formerly one of the selectmen of the town, testified he wrote in
the book; the persons or officers making the other copies of the
lists were not living; it also appeared by the evidence of Scott,
and one Comstock, one of the selectmen of the town, that so
far as they knew, the original lists of voters for these years,
were not in existence and lost; evidence was offered that the

hand writing of the copies of the lists, was that of town clerks, and it appeared that the book was a book of records of town clerks, from 1847 to present time, and that these copies appeared to be made from time to time, at or near the times named.

Other material facts alleged in the exceptions are sufficiently stated in the opinion.

*Davis and Bailey*, for the plaintiffs.

The fact that the pauper's name was on the voting lists of the defendant town for successive years was pertinent to the issue. The loss of the original lists was satisfactorily shown. It would be morally impossible to find witnesses who from memory could swear to the name of the pauper being on the list. The town clerk's books of that town did show a complete and regular record of these lists, made as though they were properly matters of record, and duly attested by the clerk who made them as true copies. The clerk has died. Under the circumstances it is contended that these copies should be admitted as evidence, upon proof of the hand writing, not as matters of record — there was no law requiring such records — but because they were the best attainable evidence of the facts sought to be proved. See Wharton, Ev. § 647; *Thornton* v. *Campton*, 18 N. H. 20.

*Charles P. Stetson* and *J. A. Blanchard*, for the defendants, cited: 1 Greenl. Ev. § § 485, n 3, 493; Wharton, Ev. § § 643, 639. *n.* 7; *Douglass* v. *Shumway*, 13 Gray, 498; *Hammatt* v. *Emerson*, 27 Maine, 308; *Evanston* v. *Gunn*, 99 U. S. 666; *Whiton* v. *Albany Ins. Co.* 109 Mass. 30; *Post* v. *Supervisor*, 105 U. S. 667; *Bryan* v. *Forsyth;* 19 How. 338; *Watkins* v. *Holman*, 16 Peters, 58.

EMERY, J. I. The voting lists of the town were shown to be lost, and the plaintiffs offered in their stead what they alleged to be copies of those lists. These alleged copies were found apparently recorded from year to year upon the book of town records, and in the hand writing of the successive clerks of the town. Proof that they were in fact copies of the originals was

essential to their admission in evidence. It was no part of the duty of the town clerk to copy such lists upon the town records. Such work would have been purely voluntary and unauthorized. Hence the alleged copies were not admissible as official copies or records. The plaintiffs do not contend that they were.

As to the alleged copy of the list for the year 1869, the plaintiffs were able to prove, and did prove it to be a copy, by the testimony of the man who made it, and it was admitted as a copy. As to the other alleged copies, there was no evidence from any one who could say that he made them, or saw them made, or had compared them with the originals, or that they were according to his recollection of the originals. Evidence that the man who made the writings was dead was no proof that he made true copies. The fact that he was town clerk at the time and had interjected these unauthorized writings into the town records gave them no evidential value. The plaintiffs simply found some writings in the hand writing of one deceased which they believe to be copies of the papers lost, but which they were unable to prove to be copies. Their only witness was dead. It was their misfortune.

The authorities cited by the plaintiffs' counsel are not applicable. This is not a question of the admissibility of a record, or of an entry, where the maker is dead. It is a question of the sufficiency of the evidence that a certain writing was a copy of a lost document. We think the evidence was not sufficient.

II. Upon the issue, whether the pauper had paid any of the taxes assessed against him for several years in the defendant town, the plaintiffs offered the assessors' books of the defendant town, containing what purported to be a list of the abatements for those years, in which the name of the pauper did not appear. We think it was incompetent. The assessors have nothing to do with the collection of the taxes. The collector's accounts might afford evidence upon that issue, but the assessors' list of abatements do not. *Non-constat* that every tax is paid or abated. The collector often fails to collect where there is no abatement. His own neglect, the insufficiency of his warrant, the poverty of the person taxed, may be the cause of non-collection.

III. The pauper was a private in a Maine regiment during the war of the rebellion. The captain of his company made in each of the years of 1861 and 1862 an official return to the state adjutant general, of the members of his company, with dates, places of residence, and enlistment, &c. That these returns, or duly proved copies of them might be evidence of any fact properly stated therein, the plaintiffs do not now dispute, but they contend that what were offered as copies, were not admissible as such without further proof. The offered papers were the printed reports of the adjutant general for those years, with the usual accompanying appendices in which appear what purport to be copies of all such returns from all the Maine regiments. The reports with the appendices were made to the governor, and we may assume were by him laid before the legislature. The printed books purport to be printed by the state printer, under legislative authority. The real value of the reports was in the appendices. All else was merely general statement and comment. The actual and desired facts and data to promulgate which the reports were made and printed, were in the annexed papers. These were in effect a part of the reports.

Being printed by the official printer, under official supervision, they are presumably compared and correct copies of the originals. They thus became *prima facie* copies, and we think are within the principle, admitting printed public documents, in evidence as copies of the original documents. *King* v. *Holt*, 5 T. R. 436 ; *Radcliff* v. *United Insurance Co.* 7 Johns. 38 ; *Bryan* v. *Forsyth*, 19 How. 338 ; *Watkins* v. *Holman*, 16 Pet. 58 ; *Whiton* v. *Albany Ins. Co.* 109 Mass. 30.

The legislature has not superseded the use of these printed copies of the records and files in the adjutant general's office as evidence. Section 113 of chap. 82, R. S., referred to by the plaintiffs' counsel does not specify any mode of making or proving copies of such papers. It does not require that all copies used in evidence shall be certified by the adjutant general. It only provides that certain particular facts may be certified by the adjutant general as found upon the records, without the whole

record being copied. There is no prohibition against using a full copy if a party desires it.

*Exceptions overruled.*

PETERS, C. J., DANFORTH, VIRGIN, FOSTER and HASKELL, JJ., concurred.