COMMONWEALTH *vs.* WALTER ST. JOHN.

SAME *vs.* SAME.

SAME *vs.* RANDEL CHANEY.

SAME *vs.* JOHN CARBONE.

SAME *vs.* PATSEY DEARIO.

SAME *vs.* JAMES GRANT.

SAME *vs.* HAROLD MATTHEWS.

Norfolk.   November 7, 1927.— January 4, 1928.

Present: BRALEY, CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Pleading, Criminal,* Complaint, Bill of particulars.  *Shellfish.  Evidence,*
    Competency, Public records, Poster, Newspaper publication of notice,
    Plan, Chalk, Judicial notice, Judicial knowledge.  *Public Officer.*

A complaint in a first count charged that the defendant on February 9,
    1927, at Quincy without the approval of the commissioner of public
    health took clams from certain tidal waters and flats proscribed as
    contaminated under G. L. c. 130, § 137, the waters and flats being par-
    ticularly described and stated to be "the flats or waters of Boston Har-
    bor, including all its arms and tributaries, inside of a line drawn from
    Windmill Point in Hull to the southeasterly point of Deer Island and
    through Deer Island and across Shirley Gut to Point Shirley, and includ-
    ing the shores of Lovells, Gallups and Georges Islands," with certain

stated exceptions; and in a second count charged that the defendant on the same day had in his possession clams taken from the area so described. A second complaint charged that the same defendant on the same day "at Quincy aforesaid" without approval of the commissioner "did knowingly transport" clams taken from the proscribed area described in the same language as in both the counts of the other complaint. *Held,* that

(1) The complaints set out the offences charged fully and with sufficient detail;

(2) The time, place, and manner of the taking and the persons who took the clams were not essential allegations of the complaint for transporting;

(3) The defendant was not entitled to be informed by a bill of particulars of the evidence to be relied upon to show the steps taken to create an effective proscription;

(4) The defendant was not entitled as a matter of law to a bill of particulars.

At the trial of the complaints above described, there was evidence that on the day named the defendant landed in his own boat on the flats at Half Moon Island, dug there, filled sacks with what was dug, placed them in his boat, and was taken by the police when coming from the flats in the boat with the clams in the sacks; that the flats were within an area proscribed as contaminated in accord with law; and that the requirements of the law in regard to notice had been complied with. *Held,* that there was evidence warranting conviction.

At the trial of the complaints above described, it appeared that no examination of the area described in the complaints had been made after the enactment of St. 1926, c. 370, or under St. 1925, c. 300. The trial judge, subject to exceptions by the defendant, admitted testimony by a fish and game warden that he saw a certain person on June 21, 1926, post at eight different places in a city and two towns adjacent to Half Moon Island or within which the island and the alleged contaminated area were situated, copies of an unsigned poster, headed "The Commonwealth of Massachusetts Department of Public Health Taking of Shellfish Prohibited Posted under Provisions of Acts of 1926, Chapter 370," and containing statements that, as a result of an examination made by the department, an area, which was described and was that set out in the complaints, was "so contaminated that shellfish obtained therefrom are unfit for food and dangerous to the public health"; that under G. L. c. 130, § 138, as amended by St. 1926, c. 370, taking of shellfish from such area was prohibited and such taking was subject to statutory penalties. *Held,* that

(1) The testimony as to the posting properly was admitted;

(2) The poster was an effectual proclamation although it bore no signature;

(3) The poster was competent evidence of the facts therein stated.

It was proper to admit in evidence, at the trial above described, a publication in a newspaper in Quincy in 1923 of a copy of a notice over the signatures of the commissioner of the department of conservation and of the director of the division of fisheries and game, stating that on

November 20, 1923, the department of public health, acting under the provisions of G. L. c. 130, § 137, requested the department of conservation, division of fisheries and game, to prohibit the taking of any oysters, clams, quahaugs or scallops from the area therein described (which was the same described on the poster already referred to) from that date until the department of public health was satisfied that contamination had ceased; and that, accordingly, all persons were notified that such taking was prohibited and that all persons violating the order were subject to penalties there set out.

The newspaper publication contemplated by the § 137, substituted in G. L. c. 130, by St. 1926, c. 370, § 1, relates to the results of the examination and determination which the statute directs to be made, and not to the reiteration of former decisions; under the provisions of St. 1926, c. 370, areas which had been declared to be contaminated under and in accordance with the provisions of St. 1925, c. 300, or of § 137 of G. L. c. 130 as it stood before the enactment of St. 1926, c. 370, § 1, continue after posting anew in accordance with § 3 of St. 1926, c. 370, to stand as areas from which shellfish may not be taken until future examination and determination are made and they are found to be uncontaminated.

Judicial notice may be taken of the fact that the director of the division of fisheries and game of the department of conservation is one of the governing board of that department.

To prove examination of the area designated in the complaints above described and determination under G. L. c. 130, § 137, before the amendments, that they were contaminated, it was proper for the trial judge to admit in evidence both the publication, above described, by the director of the division of fisheries and game in the Quincy newspaper in 1923 and a transcript of a record of the department of conservation, properly authenticated, showing that the director presented to the department of conservation a written request from the department of public health that an area which was the same as that set out in the complaints be proscribed, which record recited the examination and determination and the bounds of an area found by the department of public health to be contaminated; and that, after such presentation, the department voted to prohibit the taking of any oysters, clams, quahaugs or scallops therefrom from November 20, 1923, until such time as the department of public health became satisfied that contamination had ceased; and such record was evidence of the truth of the facts recited in it.

At the trial above described, the trial judge admitted in evidence what purported to be a transcript from the records of the department of public health of the Commonwealth, attested by an individual without the addition of an official title. Annexed to the record was what purported to be a certificate by the secretary of the Commonwealth with the official seal of the Commonwealth that the person who attested the record was the commissioner of public health of the Commonwealth and that his signature was genuine. There was no certificate that that attesting individual was in charge of the records of that department. The record showed that at a meeting of the public health council which, by G. L. c. 17, §§ 1, 3, is a constituent part of the department, after considering reports in regard to examination of the flats, tide waters,

shellfish and sea water in and about the area described in the complaints, the department, on November 20, 1923, found the area contaminated and voted to request the director of the division of fisheries and game of the department of conservation to prohibit the taking of any oysters, clams, quahaugs or scallops from the area so described. *Held,* that

(1) The certificate of the Secretary of the Commonwealth was sufficient proof of the genuineness of the signature of the attesting individual;

(2) The trial judge properly could take judicial knowledge that the attesting individual was the commissioner of the department of public health; and, since G. L. c. 17 makes no provision for a clerk or secretary for the department, might assume him to be in charge of its records;

(3) No error appeared in the admission of the record;

(4) The record showed a sufficient examination, determination and request to satisfy the law in force in 1923, G. L. c. 130, § 137, before its amendment.

*It was stated,* that the court found no provision of law making a certificate by the Secretary of the Commonwealth, with the great seal of the Commonwealth attached, that the person purporting to sign the record of the State board of health above described, at the date of the attestation, was "the Commissioner of Public Health, for and within this Commonwealth; duly appointed and qualified and that to his acts and attestations, as such, full faith and credit are and ought to be given, in and out of Court," sufficient evidence that that person was commissioner of public health.

A plan of Boston Harbor, with certain markings thereon, was *held* properly to have been admitted in evidence as a chalk at the trial above described.

SIX COMPLAINTS, received and sworn to in the District Court of East Norfolk on February 11, 1927, each in a first count charging that the defendant therein on February 9, 1927, "at Quincy aforesaid, without the written approval of the Commissioner of Public Health did take certain shellfish, to wit: clams, from certain tidal waters and flats proscribed as contaminated under Section one hundred and thirty-seven of Chapter one hundred thirty of the General Laws of said Commonwealth, to wit: from the flats or waters of Boston Harbor, including all its arms and tributaries, inside of a line drawn from Windmill Point in Hull to the southeasterly point of Deer Island and through Deer Island and across Shirley Gut to Point Shirley, and including the shores of Lovells, Gallups and Georges Islands, but excepting along the Winthrop shore inside or northeast of a line drawn from the outer end of the steamboat landing of the Point Shirley

Club at Point Shirley to the outer end of the Cottage Park Yacht Club wharf on the southerly shore of Winthrop between Orlando and Woodside Avenues and excepting along the westerly shore of Hull, East of a line drawn from the westerly extremity of Sunset or Nantasket Point to the Windemere Station on the New York, New Haven & Hartford Railroad." In a second count each defendant was charged with having in his possession clams taken from that proscribed area, but not specifically stated to have been taken in Quincy or in Norfolk County. Also, a

COMPLAINT, received and sworn to on the same day, charging St. John with having on February 9, 1927, at Quincy transported clams taken from the area therein specifically described.

In each of the six cases first above described, the defendant filed a motion for a bill of particulars specifying:

"1. The exact place where it is alleged, in the first count, that the defendant did take clams.

"2. The way and manner in which the alleged tidal waters and flats are alleged to be proscribed as contaminated as alleged in the first count.

"3. The time, place and manner in which it is alleged that the clams described in the second count were taken.

"4. By whom said clams were taken.

"5. The place where it is alleged that the defendant did have said clams in his possession.

"6. A full description of the way and manner in which certain tidal waters and flats described in the second count are alleged to be proscribed as contaminated under G. L. c. 130, § 137.

"7. By whom, where and how the tidal waters and flats referred to in the complaint were proscribed as contaminated."

In the seventh case, the defendant St. John filed a motion for a bill of particulars specifying:

"1. By whom, when, and how, the tidal waters and flats described in the complaint were proscribed as contaminated.

"2. The time, place, and manner, when, where and in which the clams described in the complaint were taken, and by whom they were taken."

The motions were denied by *Gibbs,* J., a judge of a district court sitting in the Superior Court under Sts. 1923, c. 469; 1924, c. 485; 1926, c. 285, before whom the seven cases then were tried together.

The certificate by the Secretary of the Commonwealth attached to the record of the State board of health, described in the opinion, was as follows:

THE COMMONWEALTH OF MASSACHUSETTS.

Office of the Secretary.

Boston, Sept. 10, 1926.

I hereby certify, That at the date of the attestation hereunto annexed, George H. Bigelow was the Commissioner of Public Health, for and within this Commonwealth; duly appointed and qualified and that to his acts and attestations, as such, full faith and credit are and ought to be given, in and out of Court; and further, that his signature to the annexed instrument is genuine.

In Testimony of which, I have hereunto affixed the Great Seal of the Commonwealth the date first above written.

[Seal]

F. W. COOK

Secretary of the Commonwealth

The plan, referred to in the next to the last paragraph of the opinion, is described in the record as "a portion of a map of Boston Harbor with certain markings and red lines thereon, upon which was written, 'The lines referred to in the records of the Department for Public Health for the Meeting of November 20, 1923 are shown in red on this map. George H. Bigelow, M.D., Commissioner of Public Health,' with a certificate attached to said map signed by the Secretary of the Commonwealth under the Great Seal of the Commonwealth and dated September 10, 1926, that at the date of the attestation hereunto annexed George H. Bigelow was the commissioner of the public health."

Other material evidence and exceptions saved by the defendants are stated in the opinion. The defendants were found guilty and alleged exceptions.

*C. W. Rowley*, for the defendants.

*D. P. Ranney*, Assistant District Attorney, for the Commonwealth, submitted a brief.

WAIT, J. The defendants, severally, were charged each with taking clams illegally at Quincy on February 9, 1927, from tidal waters and flats proscribed as contaminated under G. L. c. 130, § 137, and with having in his possession clams so taken. The defendant St. John was charged, in addition, with transporting clams so taken. In the Superior Court, on appeal, they were found guilty and sentences were imposed.

The cases are before us upon exceptions claimed to the denial by the Superior Court of motions for bills of particulars; to the refusal to direct verdicts of not guilty; to the admission of certain evidence, and to certain instructions given to the jury.

The defendants were not entitled, as matter of law, to the bills of particulars. The complaints set out the offences charged, fully and with sufficient detail. No further specification was needed to enable the defendants to understand what was alleged against them, and to prepare their defence. The time, place, and manner of the taking and the persons who took the clams were not essential allegations of the complaint for transporting; and in view of the fact that St. John was charged, in another complaint made at the same time and to be tried with that for transporting, with himself taking illegally the clams which he was charged with transporting, he needed no bill of particulars to enable him to defend. The defendants were informed by the complaints that the flats from which the clams were alleged to be taken were proscribed by law. They clearly were not entitled to be informed by bill of particulars of the evidence to be relied upon to show the steps taken to create an effective proscription. *Commonwealth* v. *King*, 202 Mass. 379, 384.

There was evidence from which the jury could find that the defendants on February 9, 1927, landed on the flats at Half Moon Island, dug there, filled sacks with what was dug, placed them upon a boat, were taken by police while coming from the flats in the boat; that the boat was St. John's and

the sacks contained clams.   There was also evidence which, if admissible, justified findings that the flats were within an area proscribed as contaminated in accord with law; and that the requirements of the law in regard to notice had been complied with.   No evidence in contradiction was introduced.   Manifestly there was evidence from which verdicts of guilty could be found.

The defendants contend that the evidence admitted to prove the proscription of the waters and flats as contaminated, and compliance with the requirements of the statutes, was incompetent, and that no sufficient evidence on these points was introduced.   They also contend that certain rulings of the judge in regard to the effect of the statutes governing this subject matter were erroneous.

The prosecutions are based upon St. 1926, c. 370, which was in force from and after May 25, 1926.   G. L. c. 4, § 1. That statute in its first section amended G. L. c. 130, §§ 137–142, by striking them out and inserting in their place as §§ 137–139 of G. L. c. 130, other, though similar, provisions. It directed the department of public health to examine the tidal waters and flats in the Commonwealth in order to determine what areas are so contaminated that shellfish taken therefrom are unfit for food or dangerous to the public health, and to determine and promulgate definite bounds of areas found to be so contaminated.   The department was further directed to publish in a newspaper, published in the town in which or adjacent to which any contaminated area is situated, the results of its examination, and to cause to be posted at points on or near any such area a description specifying the bounds and a statement that the area is contaminated.   By the new § 138 of G. L. c. 130, any one who took shellfish for any purpose from an area so determined, or who transported or had in his possession shellfish so taken, was subjected to a penalty, unless he had written approval from the commissioner of public health.   Section 3 of the act provided that, until further action by the department, areas examined and determined to be contaminated under and in accord with the provisions of St. 1925, c. 300, or of G. L. c. 130, § 137, as theretofore in force, should be deemed

to have been examined and determined under St. 1926, c. 370; and required posting within sixty days after May 25, 1926. No claim is made that any defendant had written approval from the commissioner.

Admittedly, no examination of the area from which the defendants took clams had been made since the enactment of St. 1926, c. 370, or under St. 1925, c. 300. It was incumbent, therefore, to show examination and determination under G. L. c. 130, § 137, as theretofore in force; and compliance with the requirements for posting. The judge admitted, against the defendant's objection and exception, testimony of a witness who was a fish and game warden, that on June 21, 1926, he saw one Raymond post certain posters at eight different places, which the jury could find to be in Quincy, Weymouth and Hingham, a city and towns adjacent to Half Moon Island or within which the island and alleged contaminated area are situated; and a copy of the poster. Manifestly there was no error in so doing.

The poster was headed "The Commonwealth of Massachusetts Department of Public Health Taking of Shellfish Prohibited Posted under Provisions of Acts of 1926, Chapter 370." It stated that the department had made an examination; that as a result it had determined that the flats and waters within limits therein definitely set forth (which were the limits set out in the complaints) were "so contaminated that shellfish obtained therefrom are unfit for food and dangerous to the public health," that the area so described is stated to be contaminated; that by G. L. c. 130, § 138, as amended by St. 1926, c. 370, the taking of shellfish from an area such as that above described is prohibited, and that any one who took shellfish from such an area or transported or had in his possession shellfish so taken was liable to fine or imprisonment to an extent there stated, and that pursuant to G. L. c. 266, § 124, any one who wilfully and maliciously or wantonly and without cause removes or defaces a paper posted in compliance with law was liable to fine to an amount stated. Such a paper spoke for itself. It needed no signature. It was as much a public proclamation as if it had issued from the lips of a herald.

While not conclusive, it was evidence of the truth of the facts which it stated. *Whiton* v. *Albany City Ins. Co.* 109 Mass. 24.

The judge admitted, also, against similar exception, an advertisement which the defendants agreed was published in the Quincy Daily Ledger, a newspaper published in Quincy, and in other newspapers published in Norfolk County and in Suffolk County on November 27, 1923. There was no evidence of other or later publication. This stated, over the printed signature "Department of Conservation William A. L. Bazeley, Commissioner, Division of Fisheries and Game, William C. Adams, Director", that on November 20, 1923, the department of public health, acting under the provisions of G. L. c. 130, § 137, requested the department of conservation, division of fisheries and game, to prohibit the taking of any oysters, clams, quahaugs or scallops from the area therein described (which was the same described on the poster already referred to) from that date until the department of public health was satisfied that contamination had ceased; and that, accordingly, all persons were notified that such taking was prohibited and all persons violating the order were subject to penalties there set out. This publication was a sufficient compliance with the requirements of G. L. c. 130, § 142, in force at the time it was made. See *Commonwealth* v. *Feeney*, 221 Mass. 323. It is not material to this prosecution, which is under the new § 138 of G. L. c. 130, and not under old § 142. The new section makes no requirement for publication before a penalty can be incurred, and therein differs essentially from the old. No new publication by newspaper is essential to prosecution for taking shellfish from an area proscribed under the earlier statutes, unless such requirement is to be inferred from the language of other parts of St. 1926, c. 370. The fair inference from the language is, that areas declared to be contaminated under St. 1925, c. 300, or the old G. L. c. 130, § 137, after posting anew in accord with § 3, shall stand as areas from which shellfish may not be taken, until future examination and determination are made and they are found to be uncontaminated. The newspaper publication contemplated in

new § 137 relates to the results of the examination and determination which the statute directs to be made, and not to the reiteration of former decisions.

To prove examination and determination under the earlier statutes, the Commonwealth offered and the judge admitted, over exception, transcripts of a record of the department of public health, of a record of the department of conservation, and, apparently, the newspaper advertisement just referred to. By G. L. c. 233, § 76, copies of records in any department of the Commonwealth authenticated by the attestation of the officer who has charge of such records, are made competent evidence equally with the originals, provided the genuineness of the officer's signature is attested by the Secretary of the Commonwealth under its seal. The record of the department of conservation is, admittedly, authenticated properly. The objection is that it is incompetent. The statutes in force in 1923, G. L. c. 130, §§ 137–142, inclusive, required examination and determination by the department of public health to ascertain contamination and fix the bounds of contaminated areas, a request in writing to the director of the division of fisheries and game of the department of conservation, and a prohibition of taking shellfish therefrom by the director for such term as said department may prescribe. This record shows that the director presented to the department of conservation a written request from the department of public health that an area which is the same as that set out in these complaints be proscribed. The request recited the examination and determination and the bounds of an area found to be contaminated by the department of public health. The record shows that, thereupon, the department voted to prohibit the taking of any oysters, clams, quahaugs or scallops therefrom from November 20, 1923, until such time as the department of public health is satisfied that contamination has ceased.

Equally with the original record, this is proof of a prohibition by the director. He requests the action. We can take judicial notice that he is one of the governing board of the department of conservation. G. L. c. 21, § 1. He took part in it. The newspaper publication, heretofore referred

to, was properly admissible to show action taken by him under the vote. There was no error in the admission of this record and publication.

Moreover, this record is evidence of the truth of the facts recited in it. *Gurney* v. *Howe,* 9 Gray, 404. *Whiton* v. *Albany City Ins. Co.* 109 Mass. 24. *Wayland* v. *Ware,* 104 Mass. 46, 52. *Elwell* v. *Hinckley,* 138 Mass. 225, 227. The request reciting the action of the department of public health was an essential step in the action which the department was taking and of which it was preserving a record. *Jewett* v. *Boston Elevated Railway,* 219 Mass. 528, *Allen* v. *Kidd,* 197 Mass. 256, *Commonwealth* v. *Slavski,* 245 Mass. 405, 417, are distinguishable.

It was not conclusive evidence but could be contradicted. No contradictory evidence appears.

The transcript from the records of the department of public health stands differently. The authentication is not in regular form. It does not expressly affirm that George H. Bigelow, who attested it, was a person in charge of the department records. The certificate of the Secretary of the Commonwealth is sufficient proof of the genuineness of the signature, but it does not assert that Mr. Bigelow was in charge of the records; and we find no provision of law making it sufficient evidence that Mr. Bigelow was commissioner of public health. The trial judge, however, could take judicial knowledge that he was such commissioner. See 23 C. J., Evidence, § 1894, and cases there collected; and, since G. L. c. 17 makes no provision for a clerk or secretary for the department, might assume him to be in charge of its records. No error, therefore, appears in the admission of the transcript. The record shows that at a meeting of the public health council which, by G. L. c. 17, §§ 1, 3, is a constituent part of the department, after considering reports in regard to examination of the flats, tide waters, shellfish and sea water in and about the area described in the complaints which are before us, the department, on November 20, 1923, found the area contaminated and voted to request the director of the division of fisheries and game of the department of conservation to prohibit the taking of any oysters,

clams, quahaugs or scallops from the area so described. This was a sufficient examination, determination and request to satisfy the law then in force.

We find no error in the admission of the record. Nor was there any in admitting the plan, objected to. It was not a part of the record. It was not required by law. At most, it was a chalk of the region which would be of assistance in understanding the geography of the proscribed area.

It follows from the foregoing that there was no error in the rulings and instructions in law to which exception was claimed. The judge was right in ruling that, as matter of law, it was not necessary in order to support convictions that there should have been any promulgation of regulations under G. L. c. 130, § 137, or that an examination be made after the passage of St. 1926, c. 370. St. 1925, c. 300, was replaced by the statute of 1926. It was immaterial that no regulations under St. 1925, c. 300, had been promulgated.

*Exceptions overruled.*