JOHN BERNARD vs. NANTUCKET BOYS' CLUB, INC.

Nantucket. January 12, 1984. — May 14, 1984.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Real Property*, Deed.

In an action to determine title to a certain parcel of land, which was claimed respectively by the defendant as part of a larger tract conveyed to it for a valuable consideration in 1957 and by the plaintiff as sole beneficiary of the estate of the defendant's grantor, where there was a conflict in the deed's description of the property conveyed and where the evidence was equivocal as to whether the parties to the deed shared a common view as to whether the disputed parcel was or was not included by the description, this court applied the rule of construction that the language of the deed was to be construed more strongly against the grantor. [825-828]

CIVIL ACTION commenced in the Land Court Department on December 30, 1980.

The case was heard by *Randall,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Kevin M. Keating* for the plaintiff.

*Theodore L. Tillotson* for the defendant.

HENNESSEY, C.J. The plaintiff brought this action in the Land Court alleging that the defendant had fraudulently registered land owned by the plaintiff, and seeking imposition of a constructive trust and an order requiring a conveyance to him. The Land Court judge found that the plaintiff was not the owner of the land at the time it was registered by decree of the Land Court in January, 1976, and he dismissed the complaint. Thus the judge did not reach the issue of fraud in the registration process. The plaintiff appealed. The Appeals Court summarily affirmed. 15 Mass. App. Ct. 1107 (1983). We

allowed the plaintiff's application for further appellate review. We affirm.

The case arises from a conflict in the description of the property conveyed by a deed from one Maude Adams to the defendant in 1957. It is agreed that the deed conveyed the lots designated B and C on an accompanying diagram (see Figure One); the subject of the dispute is the lot designated A. If the deed conveyed lot A, then the defendant owned it prior to the registration and the plaintiff's allegation of fraud in the registration process is of no consequence. If the deed did not convey lot A, then the plaintiff, as the sole beneficiary of the estate of Adams, owned it prior to the registration, and his allegation that the defendant fraudulently failed to notify him of the registration proceeding must be considered.

In 1955, Adams owned lots A, B, C, and 3. Lot 1 was owned by one Potter, who had purchased it from Adams's father in the 1920's. Lot 2 was owned by one Manuel Morris. In September, 1955, Adams conveyed lot A to one John Walsh. Approximately one month later, Walsh reconveyed lot A to

FIGURE ONE    (Schematic Representation)

Adams, and Adams conveyed lot 3 to Walsh. According to his testimony, Walsh found lot A "too low" and so he decided to "trade up" to lot 3.

In 1957, Adams executed the deed in question. The deed grants to the defendant "[t]he land in . . . Nantucket bounded and described as follows: EASTERLY by Pleasant Street; SOUTHERLY by land of John B. Walsh et ux; WESTERLY by Sparks Avenue; NORTHERLY by other land of grantor; EASTERLY by land of Manuel Morris; NORTHERLY by land of said Morris. Said property being entirely enclosed by fences. For my title see Estates of Marcia A. Adams and Edgar Adams probated in Nantucket Probate Court."

In 1965, lot 2 was acquired by the defendant. Adams died in 1972, leaving her entire estate to the plaintiff. In 1974, the defendant registered a tract of land comprising lots A, B, C, and 2.

The Land Court found, and an enlarged aerial photograph taken ten days before Adams's conveyance to the defendant clearly shows, that there was a fence around lots A, B, and C, but no fence between lots A and B at the time of the conveyance. Thus there is a conflict in the description of the property conveyed.[1] If Adams intended to convey lot A, then she must have mistakenly thought that she owned lot 1, else the call, "NORTHERLY by other land of grantor," would be meaningless. If she did not intend to convey lot A, then she was mistaken as to the existence of a fence between lots A and B.

The plaintiff contends that the title reference resolves the conflict because, while the estates of Marcia and Edgar Adams were the source of Maude Adams's title to lots B and C, they were not, because of the conveyance to and reconveyance from Walsh, the source of her title to lot A. But, although not the immediate source of her title, the Adams estates were the original source of her title. Thus the title reference, being itself ambiguous, does not help to clarify the grantor's intent. Cf. *Sawyer* v. *Kendall,* 10 Cush. 241, 246 (1852).

[1] As Figure One shows, lot B is bounded easterly by lot 2 for a very short distance. Thus the call, "EASTERLY by land of Manuel Morris," is correct whether or not lot A was intended to be conveyed.

The parties' subsequent conduct does not indicate clearly that they construed the deed one way or the other. There was evidence that Adams was assessed for, and thus presumably paid, real estate taxes on lot A through 1957, and then again from 1965 until her death. (Apparently, for some unexplained reason, no one was assessed for the property from 1958 through 1964.) Payment of taxes evidences a claim of ownership. *Blanchard* v. *Lowell,* 177 Mass. 501, 505-506 (1901). *Elwell* v. *Hinckley,* 138 Mass. 225, 227 (1885). See *Amee* v. *Boston & A. R.R.,* 212 Mass. 421, 424 (1912). In addition, Adams's attorney and conservator, Wayne Holmes, testified that he drew a will, on Adams's instructions, which, because of her death, was never executed, and which left her "Sparks Avenue property" to the defendant.[2] However, Mr. Holmes also testified that Adams told him that "she had nothing left on Sparks Avenue, that the property had gone to the Boys Club." There was evidence that the defendant's board of directors considered purchasing lot A in 1973, but there was also evidence that the defendant's executive director considered lot A to be the defendant's property in 1965. Finally, there was evidence that lot A was used and graded by the defendant in the early 1960's, without objection by Adams, who lived nearby. See *Dow* v. *Dow,* 243 Mass. 587, 593 (1923). The Land Court judge made no findings on the parties' subsequent construction of the deed. We think the evidence is too equivocal to permit a conclusion that the parties to the deed shared a common interpretation one way or the other.

In the absence of any satisfactory evidence of the actual intent of the parties to the deed, we must look to rules of construction. The Land Court judge adopted a rule of the Massachusetts Conveyancers' Association that provides: "When a

---

[2] This testimony was the subject of a motion to correct the transcript. At the hearing on the motion, Mr. Holmes testified that his testimony at the trial was that by the terms of the unexecuted will Adams left the remainder of her estate to the defendant without any reference to "Sparks Avenue property." The Land Court judge declined to rule on the motion because, in the view he took of the case, it makes no difference. The same is true for us.

deed contains two inconsistent descriptions of a parcel of land, the more specific will govern." M.E. Park & D.D. Park, Real Estate Law § 241, at 313-314 (1981). He concluded that the reference to the property "being entirely enclosed by fences" is more specific than the call, "NORTHERLY by other land of grantor." We disagree. Neither description is more specific than the other. Even if it is assumed that we would adopt the rule of preference for specificity, it has no applicability to this case.

The plaintiff urges that we adopt a rule of construction preferring natural monuments, including boundaries of other property, over artificial monuments, such as fences. See *United States* v. *Gallas,* 269 F. Supp. 141 (D. Md. 1967). Such a rule has the advantage of encouraging reliance on relatively permanent monuments and discouraging references to monuments likely to disappear. In the instant case, however, the rule might well contravene the parties' intent. In the absence of any evidence that she either viewed the property or reviewed her property holdings generally at the time she made the deed, we cannot say whether Adams was more likely mistaken as to the existence of the fence or as to her ownership of lot 1. It seems likely, however, that the defendant, the officers of which presumably viewed the property, would more readily rely on a physically observable fence than on the state of the title to an adjacent lot. See *Wheeler* v. *Randall,* 6 Met. 529, 535 (1843).

We prefer to resolve the case by applying a long-established rule of construction which, although not cited by the parties, is entirely dispositive of the controversy. "It is a rule in the construction of deeds, that the language, being the language of the grantor, is to be construed most strongly against him." *Thayer* v. *Payne,* 2 Cush. 327, 331 (1848). "If, therefore, there be two descriptions of the land conveyed, which do not coincide, the grantee is entitled to hold by that which will be most beneficial to him." *Melvin* v. *Proprietors of the Locks & Canals on Merrimack River,* 5 Met. 15, 27 (1842). See, e.g., *E. Whitehead, Inc.* v. *Gallo,* 357 Mass. 215, 219 (1970); *Fulgenitti* v. *Cariddi,* 292 Mass. 321, 326 (1935); *Moran* v.

*Somes,* 154 Mass. 200, 202-203 (1891); *Morse* v. *Marshall,* 13 Allen 288 (1866); *Salisbury* v. *Andrews,* 19 Pick. 250, 253 (1837); *Adams* v. *Frothingham,* 3 Mass. 352, 361 (1807). We assume that the defendant paid a valuable consideration for the conveyance. The deed recites consideration, and there was no evidence that the conveyance was a gift. On the contrary, the plaintiff stated several times in his testimony that the property was "sold" to the defendant. Thus we need not decide the difficult question whether a gratuitous conveyance should be construed against the grantor. Compare *Cleaveland* v. *Norton,* 6 Cush. 380, 383-384 (1850), with *Eliot* v. *Thatcher,* 2 Met. 44, 45 (1822), quoting Bacon's Abridgment, Grant, I. See also *Lynnfield* v. *Peabody,* 219 Mass. 322, 330 (1914).

Resolving the conflict in the deed in favor of the grantee, it is clear that the reference to the fence controls, and the defendant thus became the owner of lot A in 1957. Even if we assume all facts as alleged by the plaintiff as to the registration proceeding, they are without consequence and the complaint was correctly dismissed. We add that there are allegations here that the attorney who represented the defendant in the registration, who was an active member and leader of the Nantucket Boys' Club, and who also represented Adams's estate, was well aware of the doubtful state of the title to lot A. These allegations are argued in light of the fact that the attorney neither informed the Land Court of the plaintiff's claim nor notified the plaintiff of the pendency of the proceeding. Without deciding whether these allegations concerning the attorney's conduct are true, we comment that a petitioner for registration, and indeed his attorney who has personal knowledge, have a duty to disclose all adverse claims, however dubious. See *Kozdras* v. *Land/Vest Properties, Inc.,* 382 Mass. 34 (1980). It is the province of the Land Court, not the petitioner, to determine which claims are meritorious.

*Judgment affirmed.*