JOHN J. EVERSON *vs.* CASUALTY COMPANY OF AMERICA.

Middlesex.    November 11, 1910. — March 3, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Insurance*, Accident. *Evidence*, Competency, Chalks and models. *Practice, Civil*, Exceptions, Conduct of trial.

In an action upon a policy of accident insurance for the loss of the plaintiff's right hand, which was amputated in consequence of its injury in the burning of a building, where a defense relied upon is that the plaintiff at the time of obtaining the insurance was deeply in debt and procured the policy for the purpose of defrauding the defendant, and that in pursuance of this purpose he voluntarily suffered the physical injury for which he sought to recover, the defendant may be allowed to introduce any evidence tending to show that the plaintiff at about the time the policy was issued was in straitened financial circumstances and had immediate need of ready money.

If at a trial letters are admitted in evidence each of which contains matters material to the issues raised by the pleadings, but some of which also contain other matters which do not relate to such issues, and if the party against whose general objection the evidence is admitted does not ask to have the irrelevant parts stricken out or to have the effect of the letters restricted to certain issues, his general exception to the admission of the letters will not be sustained.

If at a trial certain letters are admitted in evidence against the objection and exception of one of the parties, and afterwards the judge instructs the jury to find in favor of the excepting party upon all the questions to which the letters relate,

this makes the admission of the letters wholly immaterial, as it cannot possibly have harmed the excepting party.

The general rule in regard to the admission of photographs, plans and models is that the question whether they are to be received or not is a preliminary one resting largely in the discretion of the trial judge, the exercise of which will not be revised unless it appears to have been plainly wrong or in violation of some rule of law governing the rights of the parties.

In an action upon a policy of accident insurance for the loss of the plaintiff's right hand, which was amputated in consequence of its injury in the burning of a building, where a defense relied upon was that the plaintiff suffered the physical injury voluntarily for the purpose of obtaining the insurance money, the plaintiff testified that he received his injury by reason of his hand being caught under a door, which with its surroundings he described. From the plaintiff's description and from a sketch which the plaintiff had made the defendant had a model prepared, which was set up in the basement of the court house, and the defendant offered to make any change in the model under the plaintiff's direction which was required to make it conform in every detail to the original. A witness testified that the plaintiff had inspected the model and had spent considerable time in examining it and in making full measurements of it, and that the plaintiff had said, in answer to a question from the witness, that the model was practically according to his specifications and was correct except in minor details. The presiding judge viewed the structure without the jury. The plaintiff's counsel objected to the jury being permitted to see it, because the plaintiff, after examining the structure, had stated that it was not a correct representation of the door under which his hand was caught, that it could not be a fair representation unless shown as a part of a house and not as a disconnected object, and that it had not been verified sufficiently. The defendant again offered to correct the structure in any particular which the plaintiff or his counsel might suggest, but no suggestion of correction was made by them. Thereupon the presiding judge permitted the jury to inspect the alleged model, first saying to them, that he was about to let them see something which was alleged to be somewhat similar in structure to what the plaintiff had been telling about, that they might look at it as a chalk, so that they could understand how the plaintiff's evidence applied to the situation, and that the model might help them to understand the evidence. *Held*, that the action of the judge was a proper exercise of his discretion.

CONTRACT for $10,050 upon a policy of accident insurance issued by the defendant on October 22, 1907, insuring the plain-. tiff for the period of one year against bodily injuries effected solely through external, violent and accidental means, with a provision that the amount otherwise payable should be doubled in case of certain injuries, including injuries sustained " while. in a burning building," the plaintiff having lost his right hand, which was amputated in consequence of its injury by fire in a burning building, near works operated by the defendant about eight miles from the city of St. John in New Brunswick, on November 18, 1907. Writ dated April 21, 1908.

In the Superior Court the case was tried before *Hardy*, J. The matters relied upon in defense are stated in the opinion. The jury returned a verdict for the defendant; and the plaintiff alleged exceptions relating to the acts and rulings of the presiding judge in admitting certain evidence and allowing the jury to inspect a certain model as described in the opinion.

*A. H. Russell*, for the plaintiff.

*E. K. Arnold*, (*W. B. Luther* with him,) for the defendant.

RUGG, J.    This is an action on a policy of accident insurance issued to the plaintiff by the defendant.    The injury on which the claim is founded was the amputation of the right hand made necessary by burning.    The circumstances appear with sufficient fulness in *Everson* v. *General Accident, Fire & Life Assurance Corp.* 202 Mass. 169, 174, 175, which was an action by the same plaintiff against a different defendant growing out of the same incident.    Only questions of evidence are presented.

1.    Among the defenses set up in the answer was one that the plaintiff at the time of the insurance was deeply in debt, and that he procured the issuance of the policy for the purpose of defrauding the defendant, and in pursuance of this purpose voluntarily suffered the physical injury complained of.    Against the exception of the plaintiff, the defendant was permitted to examine him as to the amount of his property and his indebtedness and his need of money in order to carry forward his business, at about the time the policy was issued.    It appeared he did owe obligations which it was impossible for him to pay in cash.    It was competent for the defendant to introduce any evidence which tended to show that the plaintiff was in straitened financial circumstances and had immediate need of ready money, as bearing upon the question whether the policy was fraudulently procured and the injuries voluntarily inflicted.    *Commonwealth* v. *Richmond*, 207 Mass. 240.

2.    The answer of the defendant set up cancellation of the policy and a failure of consideration, and that it was issued upon condition that the premium should be paid to the defendant within a reasonable time by one Wood, the plaintiff's duly authorized agent, and a failure so to pay.    Wood was called as a witness by the plaintiff, and testified to facts which would warrant a finding that he was agent or broker for the defendant

within the meaning of St. 1907, c. 576, § 96. During his cross-examination, and subject to the general exception of the plaintiff to all transactions between the witness and the company subsequent to the payment of the premium by the plaintiff to him, the witness produced and there were admitted in evidence four letters tending to show that the defendant refused payment of the premium from the witness, and requested him to return the policy for cancellation. No specific objection was made to any part of the letters as not bearing upon any issue. These letters were received in evidence early in the trial during the cross-examination of a witness called by the plaintiff. They were all material as bearing on the issues raised by the pleadings, provided there had been proof at any stage of the trial that Wood was in fact the agent of the plaintiff (*Green* v. *Star Fire Ins. Co.* 190 Mass. 586; *Horn* v. *Dorchester Mutual Fire Ins. Co.* 199 Mass. 534), or that there was any arrangement whereby the issuance of the policy was conditioned upon payment to the defendant of the premium. It is conceivable that additional evidence bearing on the issues raised by the above recited portions of the answer might have made them material. The ruling of the judge when they were offered was merely that " all the facts ought to go in evidence. If they want any question of law, I will rule on it." This language, in the light of all the circumstances, fairly means that under the pleadings all the incidents attendant upon the issuance of the policy might be shown and then he would rule upon any special question of law that might be raised later, when all the events touching the transaction were in evidence. The facts as to whether Wood was the agent of the plaintiff in such sense that he could assent to an issuance of the policy conditional upon payment of the premium within a reasonable time, or could assent to a cancellation of the policy, were material under the answer of the defendant. There was something in each of the letters bearing upon each of these issues. In one of them were sentences which perhaps might not have been relevant, but no request was made by the plaintiff to order these sentences withheld from the jury or to restrict the letters to any particular issues. The plaintiff therefore cannot now complain unless some of the letters were harmful and wholly incompetent. *Produce Exchange Trust Co.* v. *Bieberbach,* 176 Mass. 577, 581.

As to the issues upon which the letters appeared material at the time they were admitted, the judge instructed the jury in favor of the plaintiff, that is, he instructed the jury that the policy was issued to the plaintiff and that the contract sued upon was made; that Wood was the agent of the defendant for receiving the premium, and that payment by the plaintiff to Wood bound the defendant; that the policy was issued upon a good and valid consideration, and that it had not been cancelled; and that Wood was not the agent of the plaintiff for any purpose material to the issues. These included all the questions upon which the letters appeared to have a competent bearing when offered. These rulings in substance rendered the letters wholly immaterial.

While a judge presiding over a jury trial should be jealous to protect the parties against harmful and irrelevant testimony, he cannot necessarily be held to a foresight of the end from the beginning. Upon the subjects as to which the letters then seemed to be pertinent, the judge instructed the jury wholly in favor of the plaintiff. If the plaintiff had desired that the letters should be stricken from the evidence, it was his duty to have raised that question by a specific request at a stage in the trial when it was apparent that they were not to be supported by such other evidence as might render them competent. His failure to do this gives him now no ground of exception.

3. The plaintiff testified that he received his injury by reason of his hand being caught under a door, which, as we understand, was attached to the side of a wooden drying chamber or flume by ordinary hinges and weighed sixty or seventy pounds, and was kept in place by gravity. The dimensions of this drying chamber and a general description of it had been given by the plaintiff in testimony at a previous trial, and he had attached a sketch of it with dimensions to a proof of loss furnished to the defendant under its policy. During the direct examination of the plaintiff the counsel for the defendant stated that he had prepared a model exactly as described in the proof of loss, which was set up in the basement of the court house, offering to make any change in it under the direction of the plaintiff in order that it might conform in every detail to the original. Thereupon the presiding judge viewed the structure in the absence of the jury. The plaintiff's counsel objected to the jury being permitted to see

it, because the plaintiff, having examined the structure, had stated that it was not a correct representation of the one in connection with which he received his injury; that it could not be a fair representation unless shown as a part of a house and not as a disconnected object, and that it had not been sufficiently verified. The defendant again offered to correct the structure in any particular which the plaintiff or his counsel might suggest, but no further suggestion was made by them. Thereupon the presiding judge permitted the jury to inspect the alleged model, first saying to them, " I am going to let you go down into the basement to observe something which it is claimed is somewhat similar in structure to this affair that the plaintiff is telling you about. I only let you go down there to . . . look at it as a chalk, so that we can understand how his evidence applies to the situation, that is all. . . . It may help you to understand the evidence." The plaintiff excepted. Thereafter one Moore testified that the alleged model had been constructed according to the sketch given by the plaintiff to the defendant, and from his testimony given in another case, and that its inside and outside dimensions, and the material of the door, its dimensions, hinges, method of fastening, inside construction, weight and relative place in the chamber or flume were approximately the same as were described by the plaintiff, and that after the structure was completed he inspected it in company with the plaintiff, who made full measurements of it and spent considerable time in its examination, and that thereafter the witness asked the plaintiff " if that flume was not in all respects practically according to his specifications and correct," to which the plaintiff replied that it was except in minor details.

The general rule respecting the admission of photographs, plans and models is that whether they are to be received or not is a preliminary question resting largely, though not entirely, in the discretion of the trial judge, whose duty is primarily to determine whether there is sufficient similarity between what is offered and the original which is the subject of inquiry to make it of any assistance to the jury in passing upon the issue before them. While the discretion of a trial judge in this regard is not unlimited, his action will not be revised unless it appears to have been plainly wrong or in disregard of some rule of law governing

the rights of the parties.  As was stated by Chief Justice Gray in *Blair* v. *Pelham*, 118 Mass. 420:  "A plan or picture, whether made by the hand of man or by photography, is admissible in evidence, if verified by proof that it is a true representation of the subject, to assist the jury in understanding the case. . . . Whether it is sufficiently verified is a preliminary question of fact, to be decided by the judge presiding at the trial, and not open to exception."  *Shea* v. *Glendale Elastic Fabrics Co.* 162 Mass. 463.  *DeForge* v. *New York, New Haven, & Hartford Railroad,* 178 Mass. 59.  *Baker* v. *Harrington,* 196 Mass. 339.  *Field* v. *Gowdy,* 199 Mass. 568.  *Ducharme* v. *Holyoke Street Railway,* 203 Mass. 384, 394.  *Commonwealth* v. *Buxton,* 205 Mass. 49.

The flume or chamber, in connection with which the plaintiff suffered his injury, does not appear to have been so simple in its construction and arrangement that it was not possible for the jury to obtain a better understanding of it by examination of a copy of it.  The testimony of the witness Moore as to what the plaintiff himself had said about the model coupled with the offer to change it in any way that the plaintiff might direct and the refusal to accede to this proposition may well have satisfied the judge after his own inspection that the jury would be helped by an observation of it.  These circumstances may have been found by him in the exercise of his discretion to overweigh the statement of the plaintiff himself that the structure was not like the original.  We treat the representation as standing on the basis of a photograph, plan or model, especially in view of the statement in the charge to the jury, by which the judge called their attention to their "opportunity to observe the model . . . which I suggested was to be observed by you to help you to understand the evidence."  It is to be noted, however, that the judge originally permitted the jury to see it merely as a "chalk."  This word as used in practice in the courts means a rough representation, such for instance as a witness might make in outline upon a blackboard in the presence of the jury as illustrating his evidence, and not rising to the dignity of a scientifically accurate representation.  It may be pictorial, mechanical or in sketch.  Its use, however, for even this purpose is subject to the judicial discretion of the presiding judge, which, as before pointed out, is not unrestrained,

and it should not be permitted except after a preliminary determination that it throws sufficient light upon the issue to be helpful to the jury in reaching their verdict. Reference to it under the circumstances disclosed, even before the testimony of Moore, was not beyond, and was far from an abuse of, judicial discretion.

*Exceptions overruled.*