ADELAIDE J. HEWS *vs.* MARY C. TROIANI & others.

Middlesex.    January 4, 1932. — January 26, 1932.

Present: RUGG, C.J., CROSBY, WAIT, SANDERSON, & FIELD, JJ.

*Boundary. Evidence, Competency.*

At the hearing of a suit in equity to enjoin the defendant, owner of land adjoining that of the plaintiff, from trespassing upon a strip of land at the boundary of the parcels, the determining issue was the location of the boundary line. It appeared that deeds of predecessors in title of both parties referred to the boundary as "by land now or formerly of Moore"; and that was the line contended for by the defendant. A fence had been maintained from time to time through many years without objection by predecessors in title of the defendant on the line contended for by the plaintiff. And the plaintiff and his predecessors in title had exercised dominion over the strip without objection by the defendant or his predecessors in title during that period. It was agreed that no question of prescription was involved.

No deed in the chain of title of either party bounded on any fence or made mention of any fence. The trial judge ruled that the "land . . . of Moore" was made a monument and fixed the boundary; and a final decree was entered dismissing the bill. On appeal by the plaintiff, it was *held*, that the ruling by the judge was correct; and the decree was affirmed.

No error was shown in the admission by a master hearing the suit above described of a copy of an original plan, still in existence, produced by the assistant engineer of the city where the properties of the parties were located, which showed, running through the strip of land claimed by the plaintiff, the location of water and sewer connections with the defendant's house, it appearing that the copy was the one on which new sewer and water connections were traced when they were made.

BILL IN EQUITY, filed in the Superior Court on May 14, 1928, and afterwards amended, described in the opinion.

In the Superior Court, the suit was referred to a master. Material facts found by the master are stated in the opinion. The suit was heard on the master's report by *Broadhurst*, J., who found and ruled as follows: "There is nothing ambiguous about the words in the deeds of all the parties and their predecessors, 'land now or formerly of Moore.' I infer from the facts reported by the master that on the evidence before him he was able to determine exactly where the easterly line of Moore's land was. . . . The land of Moore became the monument by which the defendants' lands were and are bounded."

A final decree dismissing the bill was entered. The plaintiff appealed.

*W. A. Lackey*, for the plaintiff.

*W. R. Bigelow*, for the defendants.

CROSBY, J. This is a bill in equity in which the plaintiff seeks to enjoin the defendants from trespassing upon a strip of land, ten feet in width, claimed by the plaintiff as her property. The case was referred to a master who made the following findings: The plaintiff is the owner of real estate in the residential section of the city of Newton numbered 32 Richardson Street. The real estate of the defendants adjoins the land of the plaintiff. The defendant Cahill's estate is a vacant lot abutting on Richardson Street, and the defendant Troiani's estate consists of a house and land directly in the rear of the land of Cahill.

The question involved is over the location of the boundary line between the plaintiff's land and the land of the defendants, which line runs from Richardson Street to the rear of the property of the plaintiff and of the defendant Troiani. The chain of title of the property of the plaintiff is annexed to the master's report and marked "A," and that of the defendants' property is annexed to the report and marked "B." From these titles it appears that Elizabeth E. Eddy owned at one time, within twenty years from the date of the bill, all the property embraced in the deeds of the plaintiff and of the defendants, and all parties agree that there is no question of prescription involved in the case. The plaintiff's property was owned on December 1, 1879, by one Stephen Moore. The defendants' predecessors in title by various grants have described the boundary of their lands abutting on the land now owned by the plaintiff as "by land now or formerly of Moore." Even Elizabeth E. Eddy refers to the plaintiff's property in deeding the land now owned by the defendants as "by land formerly of Moore." No deed in the chain of title of either the defendants or the plaintiff bounds on any fence or makes mention of any fence.

A picket fence ten feet easterly of the boundary line of the plaintiff's real estate, as determined by her deed and the deeds of the defendants, was in existence extending from Richardson Street to the rear of the property of the plaintiff and the defendant Troiani from at least as far back as 1879 down to 1885. No fence was in existence in 1900, but in 1901 a new fence was erected on the line of the old fence by one Eddy, who then owned all the property. It was taken down in 1918 by mutual consent of the owners of the respective properties at that time, and an iron marker was put down at the Richardson Street end of the fence; this marker is still in existence. In 1925 a new wire fence was erected over a portion of the line of the old fence by the plaintiff, and this remained in place without any objection until May, 1928.

A wooden building about ten feet four inches long and about four feet six inches wide and approximately seven

feet high, called a playhouse, was located on the south-
easterly corner of the strip of land now in dispute from as
far back as 1879. This structure was used exclusively by
the plaintiff's predecessors in title, and within a few years
was moved by one India C. Hews, a predecessor in title of
the plaintiff, to its present location, which is on the un-
disputed property of the plaintiff. The removal, however,
had nothing whatever to do with any controversy about
the line. Houses have been in existence on both properties
since 1879, and the owners of both used the line of the
fence as their boundary line. On the ten-foot strip be-
tween the fence and the boundary line as determined by
the deeds were pear trees, shrubs and a lawn. The plaintiff
and her predecessors in title exercised entire dominion over
this property from as far back as 1879 to within a short
time of the controversy in question, without any objection
from the defendants or their predecessors in title.

During the time that the properties now owned by the
plaintiff and the defendants were owned by the heirs of
Elizabeth E. Eddy, an auction sale was made of the prop-
erty now owned by the plaintiff. The fence above referred
to was then in existence. The wooden structure in the rear
was then in its position in the disputed area standing about
six inches from the fence. From all appearances to the
casual view the property that was up for sale included the
disputed area and this wooden structure. The auctioneer
stated at the time of the sale, "There it is, look it over."
The property was bought by George W. MacGregor who
during his ownership acted as if the boundary line of the
property was the fence. His deed, however, contained the
same description as was contained in the deed to India C.
Hews.

A plan entitled "Profile of Richardson Street Sewer"
dated October, 1892, was introduced in evidence by the
defendants over the objection of the plaintiff. No error
is shown by its admission. It was originally a copy of an-
other plan. It was produced by the assistant engineer
of the city of Newton by whose engineer it had been made
and in whose custody it had been since it was made. It was

a copy of an original plan still in existence, but the plan produced was the one on which new sewer and water connections were traced when made, since 1892. The plan showed that the water and sewer connections to the defendant Troiani's house were within the disputed area. It further showed a property line indicating a fence or something of that nature on the boundary line of the two properties as determined by their respective deeds. The master states, however, that he did not find that there was ever any fence or anything of that nature on the boundary line as determined by the deeds between the properties in question. It was the conclusion of the master that if upon the foregoing facts "the boundary line between the properties of the plaintiff and the defendants is to be determined by the deeds solely, the decree should be for the defendants. If, however, upon these facts the boundary line is to be determined as the line of the fence between the properties, the decree should be that the boundary line between the plaintiff's land and the defendants' land should be ten feet east of the easterly boundary line of the plaintiff's land as determined by the respective deeds of the property." An interlocutory decree was entered confirming the master's report.

The question before us for decision is whether the true boundary line between the properties of the plaintiff and the defendants is to be determined solely by the deeds or by the picket fence. It is the contention of the plaintiff that the fence is the true boundary line and that it was so recognized and acted upon by all the predecessors in title of the plaintiff and the defendants.

The master finds under the title "Fences" that a picket fence "ten feet easterly of the easterly boundary line of the plaintiff's real estate" as determined by her deed and the deeds of the defendants was in existence extending from Richardson Street back to the rear of the property of the plaintiff and the defendant Troiani from at least as far back as 1879 down to 1885, and probably longer. Under the title "Use of Property in Dispute" he also refers to the boundary line "as determined by the deeds." There

was nothing ambiguous in the words "formerly of Moore" which appear in the deeds of all the parties and their predecessors in title. The master found that "No deed in the chain of title of either the defendants or the plaintiff bounds on any fence or makes mention of any fence." The land of Moore was made a monument by which the lands of the defendants are bounded, and the trial judge so found. *Flagg* v. *Thurston*, 13 Pick. 145, 150. *Pickman* v. *Trinity Church*, 123 Mass. 1, 5. *Temple* v. *Benson*, 213 Mass. 128, 132. *Holmes* v. *Barrett*, 269 Mass. 497, 500. The master found that there was no fence in existence in 1900, but that in 1901 a new fence was erected on the line of the old fence by one Eddy who was then the owner of the land now owned by the plaintiff and the lands now owned by the defendants; that "This fence was erected to indicate the limit of the property to be used by the tenants in the house now owned by the defendant Troiani. This fence was taken down in 1918 by the mutual consent of both owners . . . of the respective properties at that time, and an iron marker put down at the Richardson Street end of said fence which marker is still in existence." The contention of the plaintiff that Mrs. Eddy, by erecting the fence in 1901, when she owned both properties, on the same line as the old fence, regarded the fence as the true boundary line cannot be sustained. Such contention is expressly negatived by the finding of the master that she erected this fence "to indicate the limit of the property to be used by the tenants in the house now owned by the defendant Troiani." As Mrs. Eddy or her heirs owned all three parcels now owned by the parties from January, 1888, until May 29, 1913, there was no adverse occupation by the plaintiff's predecessors in title before Mrs. Eddy's occupation and ownership began, or by the plaintiff's predecessors and the plaintiff herself after it ended.

The plaintiff's requests so far as they involved findings of fact need not be considered by us. *Warfield* v. *Adams*, 215 Mass. 506. *Berenson* v. *French*, 262 Mass. 247, 254. The others were rightly denied on the ground that even if sound in law they were not applicable to the facts found.

Upon those facts it is plain that the plaintiff has failed to show that the true boundary line included the ten-foot disputed area.

The final decree must be affirmed with costs.

*Ordered accordingly.*