## COMMONWEALTH vs. ROBERT SHAGOURY.

Middlesex.   June 15, 1978. — September 12, 1978.

Present: HALE, C.J., ARMSTRONG, & BROWN, JJ.

*Larceny. Practice, Criminal,* Collateral estoppel, Fair trial, Prosecutor's conflict of interest, Instructions to jury. *Evidence,* Sketch, Value, Opinion, Prior acquittal, Relevancy and materiality, Disclosure of evidence before grand jury. *Witness,* Impeachment.

At the trial of a defendant charged with larceny, the prosecution was not precluded from introducing evidence of the theft by the fact that such evidence had been admitted at a previous trial of the defendant on similar charges, where the jury's verdict of acquittal at the first trial did not necessarily involve a determination whether the defendant had been involved in the theft at issue in the second trial. [588-590]

A defendant charged with the theft of property belonging to a telephone company was not entitled to a new trial by reason of the fact that, during the course of his trial, the prosecutor was offered a position as an attorney with the telephone company. [591-593] BROWN, J., concurring.

At a criminal trial, the judge did not abuse his discretion in permitting the jury to view an artist's sketch depicting the scene of the crime. [593-594]

At the trial of a defendant charged with the theft of cable belonging to a telephone company, the judge did not err in allowing an employee of the company to testify as to the value of the cable if sold for scrap. [594-595]

The judge at a criminal trial did not abuse his discretion in refusing to dismiss the complaint because a prosecution witness allegedly violated a sequestration order. [595]

The judge at a criminal trial did not err in excluding from evidence certified copies of records of the defendant's earlier acquittals on similar charges. [595]

At the trial of a defendant charged with the theft of cable belonging to a telephone company, the judge did not err in permitting the Commonwealth to demonstrate the workings of a cable cutter. [595-596]

The judge at a criminal trial did not err in admitting for impeachment purposes a statement handwritten by the defendant, portions of which were inconsistent with his testimony at trial. [596]

The judge at a criminal trial did not err in denying the defendant's motion to dismiss the complaint on the ground that the Commonwealth had improperly used the grand jury for investigatory rather than accusatory purposes. [596]

The judge at a criminal trial, after allowing defense counsel to read to the jury portions of a witness's grand jury testimony which was exculpatory of the defendant, correctly refused to allow him to read the remainder of the transcript which was irrelevant to the defendant's case. [596-597]

The judge at a criminal trial did not err in permitting the Commonwealth to introduce, for purposes of impeachment, testimony by a security guard concerning statements made to him by a defense witness. [597]

The judge at a criminal trial did not err in denying the defendant's motion to be provided with a transcript of a prosecution witness's grand jury testimony where defense counsel did not request the transcript until he was in the midst of cross-examining the witness and the prosecutor did not have the transcript in his possession at the time of the request. [597-598]

At the trial of a defendant charged with larceny of cable belonging to a telephone company, there was sufficient evidence to warrant a finding that the defendant had intended permanently to deprive the telephone company of the cable. [598]

There was nothing so inflammatory or prejudicial in a prosecutor's comments during the course of a trial or in his closing arguments as to require reversal of the defendant's conviction. [598]

There was no merit to a defendant's contention that the judge erroneously allowed the Commonwealth to shift its theory from that of proving the defendant's individual liability to that of proving his participation in a joint venture. [598-599]

Where the testimony of two character witnesses at a criminal trial was relevant solely to the jury's assessment of the defendant's credibility as a witness, the judge was not required to give an instruction on the effect of evidence of the defendant's general reputation for honesty and integrity. [599]

The judge at a criminal trial did not abuse his discretion in refusing to poll the jury after the verdict against the defendant had been returned. [599]

COMPLAINT received and sworn to in the District Court of Somerville on September 23, 1975.

Upon appeal to the Superior Court, the case was tried before *Hallisey*, J.

*James B. Krasnoo* (*Stephen J. Buchbinder* with him) for the defendant.

*Robert M. Raciti*, Legal Assistant to the District Attorney, for the Commonwealth.

HALE, C.J. In May, 1976, the defendant was convicted in the District Court of Somerville on a complaint charging him with the theft of property (miscellaneous cable) having a value greater than $100. He appealed to the Superior Court and after a jury trial held in Middlesex County under G. L. c. 278, §§ 33A-33G, in July, 1977, was found guilty of larceny of property having value of less than $100. He has now appealed to this court and has argued numerous assignments of error relating to the Superior Court proceeding. After examining the entire record in this case, we conclude that no reversible error is disclosed by the defendant's contentions, and we affirm the judgment of the Superior Court.

In the Superior Court trial there was evidence from which the jury could have found that one Collins and one Moriarty were employed as security representatives by the New England Telephone Company. One of their assignments during September, 1975, was to maintain surveillance of a telephone company warehouse located in Somerville. That warehouse was being used at that time to store telephone equipment and cable.

Collins and Moriarty met at the warehouse at about 7:00 A.M. on Saturday, September 20, 1975. They observed no other telephone company employees in the warehouse area at that time. Moriarty sat in his automobile which was positioned so as to afford him a view of the door of the warehouse. Collins hid himself inside the warehouse in a location above a restroom, where he had a view of the area inside the warehouse. At about 8:00 A.M. Dunphy and Conroy, two employees of the telephone company, arrived at the warehouse. They opened the door and drove a blue panel truck or van belonging to Dunphy into

the warehouse. They stopped the truck about twenty-five to thirty feet from Collins' position on the restroom roof and closed the door.

After Dunphy and Conroy had been in the warehouse for about five minutes, they began uncoiling several types of cable from reels which were stacked in the warehouse. The cable consisted of copper wires wrapped in insulating material. Dunphy and Conroy uncoiled various lengths of cable from the reels, cut them off, tied them into small coils and threw the coils into a pile near Dunphy's truck. At about 8:45 the defendant, who was employed as a foreman in the Somerville warehouse, arrived at the warehouse and sounded the horn of his green Lincoln sedan. Conroy opened the door and the defendant drove the sedan into the warehouse. He parked just behind Dunphy's truck, and Conroy closed the door. The defendant then assisted Conroy and Dunphy in removing cable from the reels until about 9:15. The men then engaged in a conversation, in which the defendant was heard to remark, "You have got enough. He could come in at any moment." Dunphy passed some money to the defendant. Dunphy and Conroy then used a forklift to load cable into Dunphy's truck. The defendant opened the door and moved his automobile out of the warehouse. Conroy and Dunphy then left in the truck.

Moriarty followed the truck in his automobile. Collins quietly slipped out of the warehouse without revealing his presence to the defendant, who remained straightening out the area. Collins got into his automobile and drove to a junkyard in Boston, where he met Moriarty. Moriarty confronted Dunphy and Conroy at the junkyard as they were in the process of unloading the cable from Dunphy's truck. He contacted the Boston police, and Dunphy and Conroy were arrested on larceny charges. Later the defendant was also charged with larceny. Dunphy and Conroy ultimately pleaded guilty to charges relating to the theft of the cable.

1. We address first the defendant's assignment of error which alleges that the denial of his motions to dismiss and for a directed verdict based upon the Commonwealth's introduction of certain evidence at trial was in violation of the principles of collateral estoppel. He argues that the Commonwealth's case was dependent on the introduction of evidence which had already been introduced at an earlier trial in Suffolk County that had resulted in the defendant's acquittal.

In the interim between the defendant's conviction on the present complaint in Distict Court and his trial in Superior Court, the defendant was tried in the Superior Court in Suffolk County on two indictments charging him with larceny. Under the first indictment the defendant was charged with the theft of eighty-eight reels of cable from the telephone company on or about July 22, 1975. The second indictment charged the defendant with the theft of six reels of cable from the telephone company on or about August 13, 1975.

In the Suffolk County trial there was evidence tending to show that on July 22, 1975, the defendant had directed a trucker, who had arrived at the Somerville warehouse to deliver eighty-eight reels of cable, to take his load to a private storage facility located in Roxbury. At that location the cable had been unloaded with the assistance of Dunphy. On August 13, 1975, the defendant had gone to a warehouse in Fall River and had removed six reels of telephone company cable for the stated purpose of transferring them to the Somerville warehouse. A telephone company employee testified that the telephone company possessed no record of either a July 22 or an August 13 shipment of cable to the Somerville warehouse. The employee also testified that the defendant was not authorized to engage private warehouse space on behalf of the telephone company. It was the Commonwealth's contention that under the circumstances the jury could infer that the two loads of cable had been stolen by the defendant in a joint venture with Dunphy and others in a con-

tinuing course of larceny from the telephone company from July 22 to September 20, 1975. To support that position further the Commonwealth called Collins to the stand and had him testify with regard to the events which had occurred at the Somerville warehouse on September 20, 1975. The defendant argues that, as the Commonwealth's presentation of Collins' testimony placed the issue of the defendant's involvement in the theft of cable on September 20 before the jury in the Suffolk County trial and, as the jury must have decided that issue against the Commonwealth in finding the defendant not guilty, the Commonwealth was thereby foreclosed from relitigating the question of his participation in the September 20 theft in the present trial. We do not agree.

The doctrine of collateral estoppel operates to insure that due process is not violated in consecutive criminal proceedings against the same defendant by foreclosing the relitigation of those issues in the defendant's second trial which were determined by the verdict in his earlier trial, even though the offenses charged in the two trials may not be the same. *Sealfon* v. *United States*, 332 U.S. 575, 578 (1948). *Harris* v. *Washington*, 404 U.S. 55, 56 (1971). Where the prior proceeding against the defendant results in a general verdict of acquittal, the court must examine the evidence, pleadings and other relevant material from the prior proceeding to determine whether a rational jury could have grounded their verdict upon some issue other than that which the defendant seeks to foreclose from consideration in the later proceeding. *Ashe* v. *Swenson*, 397 U.S. 436, 444 (1970). *Ottomano* v. *United States*, 468 F.2d 269, 272 (1st Cir. 1972), cert. denied, 409 U.S. 1128 (1973). The defendant has the burden of establishing that the issue of fact which he seeks to foreclose from consideration in the subsequent proceeding was necessarily determined in his favor by the verdict in the prior proceeding. *United States* v. *Tramunti*, 500 F.2d 1334, 1346 (2d Cir.), cert. denied, 419 U.S. 1079 (1974). *United States* v. *King*, 563 F.2d 559, 561 (2d Cir. 1977).

The defendant in this case has failed to sustain that burden.

For assistance in determining whether the issue of the defendant's participation in the September 20 theft was necessarily determined in his favor by the jury in the Suffolk County trial, we look to the instructions which were given to the jury by the judge during the Suffolk County trial. See *Sealfon* v. *United States, supra* at 579; *Turner* v. *Arkansas*, 407 U.S. 366, 369 (1972). The judge instructed the jury both prior to allowing Collins to testify and during his general charge at the close of the evidence that they were not to consider Collins' testimony in determining whether the defendant had committed any thefts other than those which were alleged to have occurred on July 22 and August 13. The judge further instructed the jury that they could properly consider Collins' testimony only as it tended to establish elements such as intent, motive, scheme, or design with regard to the proof of the indictments against the defendant. In view of these instructions it appears that the jury at the Suffolk County trial could only have considered Collins' testimony for quite limited purposes. Accordingly, we can perceive of several rational bases upon which the Suffolk County jury could have acquitted the defendant on the charges that he had committed the July and August thefts in Suffolk County without having determined that the defendant had not participated in the September 20 theft. For example, the jury, while believing the testimony concerning the September 20 theft in Middlesex County (or without having reached the point of considering it), could have found that the defendant was not present or did not act in concert with the others in the commission of the Suffolk crimes. As the Suffolk County jury did not necessarily determine the issue, the Commonwealth was not foreclosed from litigating in the present trial the issue of the defendant's involvement in the September 20 theft.

2. The defendant assigns as error the denial of his motion for a new trial on the ground that he was deprived of due process of law by reason of a conflict of interest which arose on the part of the prosecutor during the course of the tiral. The motion was heard on affidavits submitted by the defendant's attorney, by the prosecutor, and by general counsel for the telephone company. It appears from those affidavits that on July 15, 1977, the fourth day of trial in Superior Court, the prosecutor was offered a position as an attorney with the New England Telephone Company. The prosecutor informed the telephone company at that time that he was still involved in the prosecution of the present case. He stated that although he was interested in joining the legal staff of the telephone company, he could not make any commitment to do so until the present case was completed. On July 21, 1977, the jury found the defendant guilty, and he was sentenced. On July 25, 1977, the prosecutor made a firm commitment to work as an attorney for the telephone company. He commenced that employment on August 5, 1977.

The defendant argues that the offer of employment to the prosecutor by the victim in this case, which was not disclosed during the trial to either the judge or the defendant's attorney, served to raise the possibility that the prosecutor had been influenced in the performance of his duties by feelings of loyalty to his future employer. He claims that the prosecutor may have acted upon these loyalties in derogation of his duties to act in a fair and impartial manner. The defendant argues that the mere probability or appearance that he had been unfairly treated as a result of this conflict necessitates the granting of a new trial. See *Commonwealth* v. *Howard*, 367 Mass. 569, 571–572 (1975). He also argues that, at the very least, the judge's denial of his motion for a new trial was error because the judge declined to hold an evidentiary hearing to determine the extent and effect of this alleged conflict of interest.

It is the prosecutor's obligation to avoid both the reality and appearance of a conflict of interest in the performance of his official duties. See ABA Standards Relating to the Prosecution Function § 1.2 (Approved Draft, 1971). However, the fault for the alleged appearance of a conflict of interest in this matter lies with the victim and not with the prosecutor. We can hardly fault the prosecutor for being the recipient of an ill-timed offer of employment, which does not appear to have been solicited or negotiated in advance. The prosecutor acted correctly in deferring his decision on the job offer until after the defendant's trial. While it would have been better for him to disclose the receipt of this offer to the judge and the defendant's attorney when it was made, this circumstance, in itself, does not compel the granting of a new trial.

The defendant's motion asserts that he "was deprived of his right to due process because the prosecutor in trying the defendant for this crime, and in recommending the sentence that he did, was serving interests other than impartial and fair prosecution in derogation of his duties." In other words he contends that the prosecutor may have been motivated by such interests to make the recommendation, which was accepted by the judge, that the defendant be sentenced to a six month term of imprisonment. See *Ganger* v. *Peyton,* 379 F.2d 709, 713 (4th Cir. 1967). The defendant's allegation that this sentence recommendation was improperly motivated simply is not borne out by the record. The defendant was tried in Superior Court upon an appeal for a trial de novo from his earlier conviction and six months' sentence in District Court. The prosecutor attested that the general policy of the district attorney's office was to recommend that the same sentence be imposed upon a guilty verdict after a de novo appeal as had been meted out in the District Court. He informed defendant's counsel that he intended to make such a recommendation.[1] When the prosecutor was

[1] The prosecutor's affidavit stated: "11. After the trial and prior to the verdict I informed Mr. Krasnoo that my recommendation was

asked by the judge during their discussion on sentencing as to what the telephone company viewed as an appropriate sentence, he stated that he had not spoken with the telephone company on that matter. We see no reason for the judge to have disbelieved that representation.

Upon a survey of the whole case, we conclude that the judge did not abuse his discretion in denying the defendant's motion for a new trial. *Commonwealth* v. *DeChristoforo*, 360 Mass. 531, 542 (1971). Moreover, the judge acted within his discretion in deciding the motion for a new trial solely upon the affidavits which were before him. *Commonwealth* v. *Heffernan*, 350 Mass. 48, 54, cert. denied, 384 U.S. 960 (1966).

3. The remainder of the defendant's numerous assignments of error are without merit and require either limited or no discussion.

a. The judge did not abuse his discretion in allowing the jury to view an artist's sketch which depicted the scene visible to Collins as he watched the alleged crime from the restroom roof of the Somerville warehouse. Collins testified that he had assisted the artist in composing the sketch. He also stated that in making the sketch the artist had referred to a photograph which had been taken of the place where the theft occurred two days thereafter. Collins testified that the sketch was a fair and accurate representation both of the scene and of the positions of the three men as he had observed them in the warehouse on September 20. The sketch was first entered as an exhibit and later reduced to the status of a chalk. The judge had considerable discretion in controlling the degree to which a chalk could be used in assisting the jury's understanding of Collins' testimony. See *Goldstein* v. *Gontarz*, 364 Mass. 800, 814–815 (1974). Leach & Liacos, Massa-

going to be six months in the House of Correction, the same as the District Court sentence. Mr. Krasnoo told me that I was being very fair and that he had expected a much higher recommendation in the event of a guilty verdict." The defendant did not file a counter affidavit.

chusetts Evidence 289–291 (4th ed. 1967). The judge could reasonably have regarded the sketch as adequately verified by Collins' testimony, and he did not abuse his discretion in allowing the sketch to be shown to the jury. See *Commonwealth* v. *St. John*, 261 Mass. 510, 522 (1928); *Everson* v. *Casualty Co. of America*, 208 Mass. 214, 219 (1911); *Snow* v. *Massachusetts Turnpike Authy.*, 339 Mass. 620, 622 (1959).

b. The judge's treatment of testimony by Commonwealth witnesses as to the value of the cable stolen from the Somerville warehouse was proper. One witness, Hobart Saunders, testified that he had measured and inventoried the cable which had been recovered from Dunphy's truck. Saunders testified that in his position as an equipment installation supervisor for the telephone company he had gained familiarity with the types and prices of cable used by the telephone company. He stated that during the two years prior to the defendant's trial he had regularly received a monthly price list of scrap cable from Western Electric Company, a supplier of cable, that he had used that list to determine whether the telephone company had received an appropriate credit for the cable that it returned to the smelting company after the completion of a job. He placed the value of the stolen cable, if sold for scrap, at around $310.

The judge may within his discretion admit a nonexpert's testimony on the value of an item once he has found that the witness is qualified so to testify due to his familiarity, knowledge and experience with the item. Leach & Liacos, Massachusetts Evidence 105 (4th ed. 1967). The judge's conclusion that Saunders was so qualified was not clearly erroneous, and he properly admitted Saunders's testimony, leaving its weight to be determined by the jury. See *Rubin* v. *Arlington*, 327 Mass. 382, 384 (1951); *Willey* v. *Cafrella*, 336 Mass. 623, 624 (1958).

The judge also permitted another witness, Robert West, to testify at trial that the retail value of the stolen cable, based upon a price catalogue issued by Western

Electric, was about $1,988. After West had testified, the judge decided to strike his testimony, and he instructed the jury to disregard it. We perceive no basis for concluding that the jurors failed to comply with the judge's instructions to disregard West's testimony, see *Berlandi* v. *Commonwealth*, 314 Mass. 424, 452 (1943); *Commonwealth* v. *Gordon*, 356 Mass. 598, 604 (1970), especially since the jury found the value of the stolen property to be less than $100.

c. The defendant moved to dismiss the complaint or to strike the testimony given by Robert West on the ground that West had allegedly violated a sequestration order which had been applied to all the witnesses during the trial. As noted above, West's testimony was ultimately withdrawn from the jury's consideration for a different reason. The judge acted within his discretion in declining to dismiss the complaint because of this isolated, alleged violation of the sequestration order. *Commonwealth* v. *Navarro*, 2 Mass. App. Ct. 214, 223 (1974).

d. The judge properly excluded from evidence certified copies of the defendant's acquittals at his earlier Suffolk County trial. We concur with the judge's conclusion that the defendant's prior acquittals on the July and August charges were irrelevant to the determination of his guilt or innocence of the September 20 theft. See *Commonwealth* v. *Cresta*, 3 Mass. App. Ct. 560, 563–564 (1975). The judge properly exercised his discretion in excluding the copies of the acquittals as they served no useful purpose and might have caused the jury to be confused or misled. Contrast *Commonwealth* v. *Leno*, 374 Mass. 716, 717–718 (1978) (discussion of absence of discretion regarding the introduction of certified copies of prior *convictions* described under G. L. c. 233, § 21).

e. There is no merit in the defendant's assignment of error concerning the Commonwealth's demonstration of the workings of a cable cutter. The defendant had testified that the cable cutter used in the demonstration was the same type commonly used in the Somerville ware-

house. The determination whether such a demonstration was of any value to the jury rested within the judge's discretion. See *Commonwealth* v. *Flynn*, 362 Mass. 455, 473 (1972). We will not interfere with his exercise of that discretion, particularly as the judge cannot be said to have been wrong and as the defendant has failed to establish that he was in any way prejudiced by the demonstration.

f. The judge did not err in admitting a six-page handwritten statement which had been composed by the defendant on September 22, 1975. The judge correctly found that portions of the statement were inconsistent with the testimony given by the defendant at trial, and the statement was admitted solely for impeachment purposes. Such a statement "need not contradict in plain terms the testimony of the witness if the trial judge finds that it fairly tends to control or qualify that testimony. . . . The prior statement need only tend in a different direction from what is sworn." Leach & Liacos, Massachusetts Evidence 114 (4th ed. 1967).

g. The judge correctly denied the defendant's motion to dismiss the complaint "on the grounds that the Commonwealth had improperly used the grand jury [which sat in Suffolk County in July, 1976] for investigatory as opposed to accusatory purposes." The defendant has failed to carry his burden of showing either that the grand jury had been improperly used or that prejudice had occurred to him in the present case from any misuse. See *Commonwealth* v. *Flynn, supra* at 461.

h. At trial Dunphy was called as a witness by the defendant. Dunphy exercised his Fifth Amendment privilege and refused to testify. The judge then allowed the defendant's attorney to read to the jury certain portions of a transcript of the testimony which Dunphy had given before the grand jury in Suffolk County in July, 1976. In that testimony Dunphy denied that the defendant had been involved in the theft of the cable on September 20. The judge correctly refused to allow the defendant's at-

torney to read the entire transcript of Dunphy's grand jury testimony because, apart from the portions which were read to the jury, that testimony was irrelevant to the present proceeding. See *Commonwealth* v. *Greenberg*, 339 Mass. 557, 580–581 (1959), and cases cited.

i. The judge properly permitted the Commonwealth to introduce testimony by Collins of statements which Dunphy had made to him at the junkyard after the theft of the cable. The judge properly found that Dunphy's statements to Collins were inconsistent with his subsequent grand jury testimony, which the judge permitted the defendant to read to the jury and in which Dunphy denied the defendant's involvement in the theft of the cable. Contrary to the defendant's contention, the Commonwealth was neither required to confront Dunphy, who, in effect, was a defense witness, with his prior inconsistent statement nor required to afford him an opportunity to explain the apparent inconsistency before the jury. See *Allin* v. *Whittemore*, 171 Mass. 259, 262 (1898); Leach & Liacos, Massachusetts Evidence 131 (4th ed. 1967). Contrast G. L. c. 233, § 23. Neither would Dunphy's "unavailability" bar the impeachment of his grand jury testimony. See McCormack, Evidence § 37, at 74 (2d ed. 1972). Compare Fed.R.Evid. 806 and Notes of Advisory Committee thereto, U.S.C.A., Federal Rules of Evidence 709–711 (1975).

j. The judge did not err in denying the defendant's demand to be provided with a transcript of the testimony given by Moriarty before the grand jury in Suffolk County in October, 1975. Although such material should be routinely supplied by the Commonwealth when properly requested by the defendant, see *Commonwealth* v. *Stewart*, 365 Mass. 99, 105–106 (1974), the defendant's attorney did not demand these particular grand jury minutes until he was in the midst of cross-examining Moriarty during the course of the trial. The prosecutor in Middlesex County did not have these Suffolk County grand jury minutes in his possession at the time of the demand. Nor

had he been ordered to produce the minutes prior to trial. The minutes requested by the defendant do not appear in the record of this appeal. See *Commonwealth* v. *DeChristoforo*, 360 Mass. at 536. We will not speculate whether the defendant would have benefited from those minutes, particularly since the defendant had in his possession, during his cross-examination of Moriarty, both the minutes of Moriarty's 1976 grand jury testimony and the transcript of Moriarty's testimony in the District Court. Compare *Commonwealth* v. *Lewinski*, 367 Mass. 889, 901 (1975).

k. The judge properly denied the defendant's motion for a directed verdict. The evidence, when considered in the light most favorable to the Commonwealth, was sufficient to support an inference by the jury that the defendant had intended permanently to deprive the telephone company of the cable. See *Commonwealth* v. *Mangula*, 2 Mass. App. Ct. 785, 786 (1975).

l. The defendant has argued as error numerous comments, made by the prosecutor during the course of the trial and in his closing argument, which the defendant alleges were not corrected by the judge. After reviewing each of the instances cited by the defendant we fail to perceive any statement that was made by the prosecutor in the jury's presence which was so inflammatory or prejudicial as to require reversal of the defendant's conviction. Nor do we believe that individual comment upon each of the matters listed would add anything not fully covered in the cases beginning with *Commonwealth* v. *Earltop*, 372 Mass. 199, 203–204 (1977).

m. The defendant argues that the judge erroneously allowed the Commonwealth to shift its theory in this case from that of proving the defendant's individual liability for the theft of the cable to that of proving the defendant's participation in a joint venture along with Dunphy and Conroy. We reject this contention. The defendant has failed to indicate any place in the record where the Commonwealth made any representation that it would exclu-

sively proceed on either theory. The defendant should have been made aware at the latest by the prosecutor's opening statement that the Commonwealth intended to introduce evidence indicating the possible existence of a joint venture.

n. The judge was not required to give the instruction requested by the defendant on the effect of evidence of the defendant's general reputation for honesty and integrity with regard to the jury's determination whether he had been involved in the theft. The two character witnesses who had been presented by the defendant had testified solely to the defendant's reputation for truth and veracity. This evidence was relevant solely to the jury's assessment of the defendant's credibility as a witness. See *Commonwealth* v. *Beal*, 314 Mass. 210, 230 (1943). The judge's instructions on the credibility of witnesses were adequate. See *Commonwealth* v. *Cook*, 351 Mass. 231, 236–237, cert. denied, 385 U.S. 981 (1966).

o. The defendant's assignment of error relating to the judge's instructions to the jury is wholly without merit. The method and extent of the jury charge are matters within the judge's discretion. *Commonwealth* v. *Kelley*, 359 Mass. 77, 92 (1971). The judge's charge, when considered as a whole, was fair and adequate. See *Commonwealth* v. *Benders*, 361 Mass. 704, 707 (1972).

p. The judge did not abuse his discretion in refusing to poll the jury after the verdict against the defendant was returned. See *Commonwealth* v. *Bregnard*, 3 Mass. App. Ct. 489, 493–494 (1975).

q. The sentence imposed by the judge upon the defendant was well within the limits set by G. L. c. 266, § 30. The judge did not abuse his discretion in denying the defendant's motion to revise or revoke that sentence. See *Commonwealth* v. *Crowell*, 347 Mass. 771 (1964).

Nor do we accept the defendant's contention that the above matters, even if they are not individually sufficient grounds for reversal, should be considered so in their cumulative effect. To the contrary, we conclude that the judge conducted this eight-day trial wisely and fairly.

*Judgment affirmed.*

BROWN, J. (concurring). I fully concur in the majority opinion. I do, however, feel compelled to state that the offer of employment which occurred in this case is incompatible with the prosecutor's obligation to avoid both the reality and appearance of a conflict of interest in the performance of his official duties. Cf. *Matter of Bonin*, 375 Mass. 680, 711 (1978). It cannot be gainsaid that the criminal process must not only be fair but that it must manifestly appear to be fair. As the majority pointed out, the instant record does not support the allegation of improper motivation on the part of the prosecutor. I, however, depart slightly from the view expressed by my brothers. I believe there was a compelling need for the prosecutor to place on the record the clearly improper offer of employment by the telephone company (the victim here). In short, that offer offends justice, shocks the conscience, and is obnoxious to the concept of fair play. Whether intended or not, the message could not be clearer — the telephone company wanted "an edge."